517 So.2d 474 (1987)
STATE of Louisiana
v.
Roy McCRAY, Sr.
No. KA 87 0574.
Court of Appeal of Louisiana, First Circuit.
December 22, 1987.
William R. Campbell, Jr., New Orleans, for appellee.
Maurice J. LeGardeur, Covington, for appellant.
Before WATKINS, CARTER and FOIL, JJ.
FOIL, Judge.
Defendant, Roy Emile McCray, Sr., was charged with one count of theft of property valued at $100 or more but less than $500. He pled not guilty and was tried by a jury which convicted him of theft of property having a value of less than $100, a responsive verdict to the charged offense. Subsequently, the trial court sentenced defendant to imprisonment for six months in the parish jail. The sentence was suspended, and defendant was placed on probation for one year, subject to the conditions that he pay a $500.00 fine and perform twenty days of public service. Defendant appeals his conviction and sentence.
The record reflects that the alleged offense occurred on approximately June 15, 1986, in St. Tammany Parish. The offense relates to various items of movable property taken from a tract of land, comprising 22.44 acres, belonging to James F. Hall and his wife, Phyllis C. Hall. On June 6, 1986, the Halls acquired the land by act of cash sale from the First Guaranty Bank of Hammond. The bank had acquired the land at a sheriff's sale on April 4, 1984, as a result of foreclosure proceedings it instituted against the defendant and his wife, who had mortgaged the land to the bank. The McCrays, however, continued to reside on the land until they were evicted during February of 1986.
In regard to the eviction proceedings, Marcus King, the justice of the peace in whose ward the land is located, rendered a written judgment on February 5, 1986, ordering the McCrays to vacate the premises by February 14, 1986. King testified that defendant had no objection to the judgment, but that he asked for more time to enable him to remove a "bunch of stuff" from the land, although defendant did not *475 have any proof that the items belonged to him. On February 6, King met with defendant and John Seal Vaughn, an employee and representative of the bank. At that time, according to King's testimony, he orally rendered a "judgment" extending the deadline for defendant to vacate the premises by three days, i.e., through February 17; and, as part of the "judgment", any "stuff" that defendant failed to remove from the land before the extended deadline expired became the property of the bank. King testified that he also told defendant that, after the deadline to vacate expired, he was never to go back onto the land. King further testified that defendant was "well satisfied", that he had ten days to appeal his "judgment", and that defendant did not appeal it. During Vaughn's testimony, he acknowledged that he was present during a "conversation" between King and defendant regarding movable property and that, as a result of the conversation, defendant was given a certain number of days to move his property from the bank's property and that defendant failed to do so. Vaughn further testified that the bank's cash sale to the Halls transferred "everything" that was on the land to the Halls.
Phyllis Hall testified that, after she and her husband purchased the land from the bank, they hired Leonard Anthony to do some bulldozer work, "bush hogging" and clearing on the land. Anthony began doing the work during the first week after the land was purchased. Ms. Hall testified that, from the "6th of June on", she personally told defendant she did not want him on her property and that Anthony was instructed to call her if he saw anyone on her property without her permission.
Leonard Anthony testified that he worked on Ms. Hall's property for "a week or so". Before beginning the actual work, defendant told him he had some pipe piled near a pecan tree and that he wanted the pipe. On the following day, Anthony informed the Halls of what defendant had told him. Anthony testified that Ms. Hall responded that defendant was not supposed to take anything from the land. However, the Halls agreed to allow defendant to remove the pipe from their property and told Anthony to tell defendant to remove the pipe not later than the following Friday morning and not to come back onto their property for anything else. Defendant did not remove the pipe by Friday morning. On the following day, he told Anthony he removed the pipe after Anthony stopped working on Friday evening.
Thereafter, Anthony saw defendant come onto the Halls' property and start loading five crossties. Thereupon, Anthony told defendant: "Ms. Hall said you are not supposed to take anything else off this property." Defendant responded: "Tell her to talk to me." Defendant then loaded the crossties and one fifty-five gallon drum on his truck and took them to the adjacent property (where he lived) and stacked them near the property line in "plain view". Anthony testified that Ms. Hall had previously given him the crossties, although he did not so inform defendant. On the day after defendant took the crossties and the barrel, he told Ms. Hall what defendant had said to him at the time he took them. Ms. Hall told Anthony to retrieve the crossties and take them home with him, which he did.
Anthony testified that the crossties and the barrel were the only items he saw defendant take from the Halls' property. However, he had worked around a five hundred gallon tank on the Halls' property, which he later saw on defendant's property. Additionally, he had seen some barrels containing used motor oil that had been moved to the property where defendant was living.
Anthony testified that Ms. Hall had instructed him to save three fifty-five gallon drums for trash barrels, that she had stacked some automotive radiators in a pile and that she told him not to bury the radiators. Ms. Hall testified that they had burned some crossties but that they kept seven that were still good. Some other items considered trash, i.e., not useable, were buried, including some automotive radiators, motors and transmissions. Ms. Hall and her husband personally stacked up some sheets of plywood and placed some barrels, crossties, pipes, chairs and *476 numerous other items in various areas on their property for future use or sale.
Ms. Hall testified that she and her husband knew things were being taken because they could see where "heavy, heavy tires had been across the land from our property to where [defendant lived] ... you could see that they had dragged or pulled or something across there ..."
Ms. Hall testified that five automotive radiators, ten automotive transmissions, three sheets of plywood, two lawn chairs and a five hundred gallon tank were missing from her property. She testified that the two lawn chairs were in front of defendant's trailer and that during the third week of June of 1986 the five hundred gallon tank was on the property where defendant resides. Ms. Hall acknowledged that she told Anthony to take back the crossties that defendant had taken and testified that, with the exception of the crossties, she made no attempt to regain any of the other items.
Ms. Hall testified that the crossties were worth about seven dollars each and that the plywood was worth about fourteen dollars per sheet. Glenn Patrick Warner, who qualified as an expert witness in the field of valuing metals, testified that a used five hundred gallon tank was worth about one hundred dollars at wholesale and about two hundred fifty dollars at retail. He further testified that such a tank would weigh more than two hundred pounds and its scrap value was about 1½-2 cents per pound.
Defendant took the stand in his own defense. He testified that before he was evicted from the 22.44 acres of land purchased by the Halls, he used the land primarily to store automotive parts and farm equipment and implements. He testified that he collected "some of these items of junk" over the twenty-five years that he owned the land. He owned all the "stuff" on Ms. Hall's property, and he did not intend to relinquish his ownership. Defendant further testified that he did not discuss the subject of the movables he left on the Halls' property with the Halls and that the Halls did not tell him to remove the movables from their property.
Defendant denied that King had given him a deadline for removing the movables he claimed were his from the tract of land from which he was evicted. King gave him time to move his "stuff", but he did not know how much time he was given.
Defendant admitted that he used his truck to pull a five hundred gallon tank onto his property and that the tank was on the Halls' land at the time he did so. He further admitted that he loaded five or six crossties and a barrel on his truck and took them to the property line where he placed them and that Anthony had told him that, according to Ms. Hall, he was not supposed to take anything after he took the pipe. Defendant testified that he told Anthony: "Well, look, I'm going to take them about a hundred and fifty feet over here. I'm going to lay them along the line with the rest of my stuff. I said, if Ms. Hall wants the ties, I'm living right there, talk to me. There's no problem."
Defendant maintained that he did not take anything that did not belong to him. He testified that he thought the crossties were going to be destroyed or buried and that Anthony's son told him the five hundred gallon tank was going to be buried. In regard to his use of the five hundred gallon tank, defendant testified: "I fully intend to empty the tank out, burn it out, cut it out and ... make me a septic tank from out of it."
Defendant contends that there was a lack of sufficient evidence to sustain his conviction of theft of property valued at less than one hundred dollars. He argues that the state did not prove that the property he allegedly stole belonged to someone other than him and that he had a specific intent to deprive another permanently of the property. He sets forth as reasonable hypotheses of innocence that (1) he took the crossties and other movables based on his belief that he still owned the items and that no one else wanted them and (2) he could have believed that, if Ms. Hall owned the movables, she abandoned her ownership *477 when Anthony was instructed to bury the property.
The constitutional standard for testing the sufficiency of evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime charged beyond a reasonable doubt.
As defined in LSA-R.S. 14:67, theft consists of three elements: (a) the "misappropriation or taking of anything of value which belongs to another," (b) either "without the consent of the other ... or by means of fraudulent conduct," (c) with "intent to deprive the other permanently" of the object of the taking or misappropriation. State v. Victor, 368 So.2d 711 (La. 1979). Proof of the ownership of stolen property is not an essential element of proof of the crime of theft. The state is required only to prove that the property belonged to someone other than the defendant. State v. Rossi, 273 So.2d 265 (La. 1973).
After carefully reviewing all the evidence in this case in the light most favorable to the prosecution, we find that a rational trier of fact could not have found beyond a reasonable doubt that defendant had a specific "intent to deprive [another] permanently" of the movables he was accused of stealing from Ms. Hall's property. It is the "evil" state of mind of the actor that normally distinguishes criminal acts (punishable by the state alone) from mere civil wrongs (actionable by private individuals against one another). State v. Bias, 400 So.2d 650 (La.1981).
Neither the act evidencing the transfer of ownership to defendant's 22.44 acre tract of land by sheriff's sale to the bank nor the cash sale of the land by the bank to the Halls purported to transfer ownership of any movables located on the land; and the February 5, 1986, written judgment rendered by Marcus King, ordering defendant to vacate the premises by February 14, 1986, did not make any reference whatsoever to any movables located on the land.
Herein, there was no evidence introduced at trial refuting defendant's testimony that the only movables he removed from the Halls' land were those he claimed to have accumulated and stored on the property during the time he owned it. The evidence showed that defendant apparently made no effort to conceal any of the movables he removed from the Halls' property. Instead, he even placed some of the movables near the property line between the approximately four acres of land on which he placed the movables and the Halls' land.
Accordingly, for the foregoing reasons, the conviction is reversed and the sentence set aside.
REVERSED.