THE STATE OF OHIO *v.* GLENN.

(No. C 89 CRB 026366—Decided April 20, 1990.)

Hamilton County Municipal Court.

*Michael D. Rudd,* assistant prosecuting attorney, for plaintiff.
*Robert C. Winkler,* for defendant.

MARK P. PAINTER, J. This matter was tried on March 5, 1990, without the intervention of a jury. The following facts were adduced. The defendant, John K. Glenn, was charged with felony theft pursuant to R.C. 2913.02, as a consequence of his failure to maintain rental payments due under a rental contract involving the rental of certain items of used furniture. The defendant was arrested and jailed, but made bond the following day. At the preliminary hearing on the felony, the prosecution reduced the charge to a misdemeanor, and trial was scheduled in this court.

The rental contract, entitled "Consumer Rental-Purchase Agreement," was entered into with The Rental Store located in Norwood, Ohio, and is attached hereto as Exhibit A. There is certainly some question as to whether the transaction was a sale or a lease. In the court's view this distinction is not relevant to the ultimate issue of guilt or innocence, so we need not make that determination.

The furniture covered under the rental contract was delivered to Glenn's residence at 1917 Losantiville, Cincinnati, Ohio, on April 21, 1989, at which time Glenn signed the rental contract. The furniture has remained at the Losantiville Avenue address since the date of delivery.

Defendant made approximately eight weekly rental payments prior to his default on July 28, 1989. It is undisputed that at all times relevant

Glenn did not change his address, phone number or conceal his true identity. All forms of identification provided by Glenn to The Rental Store were accurate, and the information was still accurate at the time of trial. There has been no face-to-face contact between Glenn and employees of The Rental Store since the delivery of the furniture on April 21, 1989. Employees of The Rental Store testified that they attempted to make contact with Glenn at his apartment but were unsuccessful.

The facts of this case do not support a conviction for theft. The General Assembly has set forth the elements necessary to constitute theft. R.C. 2913.02(A) provides:

"No person, *with purpose to deprive the owner* of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

"(1) Without the consent of the owner or person authorized to give consent;

"(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;

"(3) By deception;

"(4) By threat." (Emphasis added.)

The term "deprive," as used in the theft offense, is defined at R.C. 2913.01(C) as follows:

" 'Deprive' means to:

"(1) Withhold property of another permanently, or for such period as to appropriate a substantial portion of its value or use, or with purpose to restore it only upon payment of a reward or other consideration;

"(2) Dispose of property so as to make it unlikely that the owner will recover it;

"(3) Accept, use, or appropriate money, property, or services, with purpose not to give proper consideration in return therefor, and without rea-

sonable justification or excuse for not giving proper consideration."

Essentially, the gist of the state's allegation is that Glenn's failure to make his rental payments in a timely manner constitutes theft under R.C. 2913.02(A), since he continued to use the property without "proper consideration." There is no dispute that theft of services, in certain circumstances, can fall under the purview of R.C. 2913.02. However, the question of whether the rental payments are actually due and owing from Glenn under the rental contract is a separate and distinct issue that has no bearing on Glenn's guilt or innocence. A civil court as opposed to a criminal court is the appropriate forum in which to determine whether rental payments are delinquent.

The Committee Comment to R.C. 2913.01 states as follows:

"*The definition of 'services' is intended to be restrictive rather than comprehensive,* and includes only labor, personal or professional services, public utility and common carrier services, food and drink, transportation, and entertainment. *Services such as the rental of property,* housing, or accommodations are not included, and certain offenses involving these are the subject of special statutes in Chapter 2913." (Emphasis added.)

As evidenced by the foregoing, it is beyond dispute that the legislature had no intent to make delinquent rental or nonpayment situations constitute theft. It is clear that Glenn's failure to keep his rental payments current should not constitute theft of services.

The state has argued in the alternative that the issue is not theft of services but theft of the furniture that had been delivered to Glenn's apartment. At trial the state amended the complaint, alleging that Glenn exerted control over the property "beyond the

scope of the express or implied consent of the owner or a person authorized to give consent." In accordance therewith, the state has argued that Glenn's failure to make payments and/or return the furniture constitutes theft. There is a factual dispute as to whether Glenn made arrangements to return the furniture. Glenn has stated that he had made arrangements to return the furniture but the state's witness denied any such arrangements. Nevertheless, the mere failure to return rental property which was voluntarily delivered to Glenn's possession does not and should not constitute theft. The Rental Store consented to Glenn's possession, and even delivered the furniture to Glenn's residence. The delivery was obviously with the consent of the owner. The consent cannot simply or automatically be revoked when one is in default of payment. Is one a criminal by missing one payment? Two?

Though the state filed no brief, the state might contend that this case is similar to cases involving motor vehicles originally rented from a rental company, and not returned for a substantial period of time. Although each case turns on its own facts, it is clear that one may be convicted of theft, or receiving stolen property, in such a situation. See *State* v. *Smith* (Apr. 17, 1989), Lake App. No. 13-085, unreported; *State* v. *Boyce* (1986), 33 Ohio App. 3d 295, 515 N.E. 2d 982; *State* v. *Bentz* (1981), 2 Ohio App. 3d 352, 2 OBR 408, 442 N.E. 2d 90.

Quite clearly, an automobile is in a category much different from that of furniture. The court notes that, while the common-law element of "asportation" is not now necessarily required for theft, it is certainly present in automobile cases. Also, rental agreements for automobiles tend to be of shorter duration and, in all automobile cases this court has found where defen-dant was convicted, the rental term had *expired*. Here, the rental term still had months to run, though defendant was delinquent in his payments.

From a public policy standpoint, allowing a criminal conviction in this type of case would, simply stated, be ridiculous. The prosecuting witnesses and their employer, The Rental Store, have myriad rights and remedies in a court exercising civil jurisdiction. More specifically, if the "rental agreement" herein is actually a sale, and the "lessor" has a security interest in the goods, then Glenn is subject to the default procedures set forth in R.C. 1309.44. This section provides remedies to a secured party when a debtor is in default of payment under a security agreement. The statute provides:

"(A) When a debtor is in default under a security agreement, a secured party has the rights and remedies provided in sections 1309.44 to 1309.50 of the Revised Code * * *. *He may reduce his claim to judgment, foreclose, or otherwise enforce the security interest by any available judicial procedure. * * *"* (Emphasis added.) The hornbook word "replevin" comes to mind.

This court is unaware of any case interpreting the phrase "any available judicial procedure" to encompass charging a debtor with a criminal offense in order to recover the property or arrearage of rental payments. If that were the case, each time a debtor defaulted on a loan or lease secured by personal property and failed to immediately return the property, the secured party could charge the debtor with theft of the property. Since real property is now subject to theft pursuant to R.C. 2913.02 (see Committee Comment to that statute), by logical extension, a person who defaulted on his or her mortgage could conceivably be subject to a theft charge for failing to make timely payment and/or return the real property. Will each eviction

case give rise to a companion criminal offense — perhaps a felony if the delinquent rent is more than $300?

One could go on speculating and formulating situations in which debtors making tardy payments could be charged with theft. This court will not condone the wholesale conversion of delinquent debtors into criminals — will we next be asked to imprison them for their debts? Such a result would clearly violate the Ohio constitutional provision forbidding imprisonment for debt, Section 14, Article I, Ohio Constitution. See *Bloomberg* v. *Roach* (1930), 43 Ohio App. 178, 182 N.E. 891.

This court has found no cases, and none has been cited, wherein the defendant has been convicted in a similar situation. Aside from the automobile cases, we have been able to discover no cases which allow a conviction when the renter has not absconded with the property. Had Glenn moved his residence, the furniture with it, and hidden himself, it could be conceivably inferred that he was attempting a theft of the furniture. See *Wrather* v. *Arkansas* (Ark. App. 1981), 613 S.W. 2d 601.

A case almost exactly on point with our present situation was decided by the Supreme Court of Louisiana in *State* v. *Bias* (La. 1981), 400 So. 2d 650. In that case, Bias had rented a television for weekly payments. The contract purported to be a rental agreement, but provided that the lessor would transfer ownership after one hundred four weekly payments. Here, the only difference is that Glenn's payments would run seventy-eight weeks. Bias defaulted after six weekly payments and, in addition, he moved and took the television set with him. The agreement provided, as does the one in question here, that the furniture was not to be moved without the consent of the lessor.

The Supreme Court of Louisiana was asked to construe the contract as a sale and not a lease. It is at least arguable that our contract could also be so construed, but we, as the Louisiana court did, do not need to reach that issue. Bias was arrested for violating a Louisiana statute which was somewhat similar to ours, prohibiting "unauthorized use of a movable." The Louisiana statute did not require that a person intend to deprive the owner of his property, but the Louisiana court believed that it must be so construed. R.C. 2913.02, however, does require that the defendant have a "purpose to deprive the owner" of property. The Louisiana Supreme Court concluded that there was no evidence that Bias had intended to deprive the owner of property, and that such purpose could not be inferred even viewing the case in a light most favorable to the state. The Louisiana court went on to state that *mens rea* is necessary in such a situation, and there was nothing to permit an inference that Bias intended to commit a theft offense, even though Bias had removed the television set from its authorized location. *Id.* at 652-653.

Our defendant, Glenn, has never even moved, and the furniture remains at his residence. Certainly, there is no evidence supporting an inference that Glenn intended to steal the furniture. If anything, the evidence would support the opposite inference. This case is an all too common example of private parties, often in a good faith belief that such procedure is proper, seeking to redress an alleged civil wrong by employing the criminal law. See, *e.g., State* v. *Rudd* (1988), 55 Ohio Misc. 2d 1, 562 N.E. 2d 955.

"It is the 'evil' state of mind of the act that normally distinguishes criminal acts (punishable by the state alone) from the mere civil wrongs (actionable

by private individuals against one another)." *Louisiana* v. *McCray* (La. App. 1987), 517 So. 2d 474, 477.

There are special established procedural means available to secured parties or lessors of property for the protection and repossession of the property. Those procedures were not employed here. It is obvious that The Rental Store, aided and abetted by the prosecution, is attempting to use the court as its private collection agency. By having Glenn charged with theft and seeking a conviction, the store could, if restitution be ordered, effectively short-cut the collection procedures provided by law. The Rental Store has essentially stood a civil case on its head by converting a civil collection matter into a criminal case. Additionally, all of the procedures setting forth debtors' rights will not have to be complied with. This court will not allow itself to be a party to such action.

The defendant is perhaps a delinquent debtor, and this court, in a proper civil case, would be empowered to order the return of the furniture; but he is not guilty of theft. We cannot, will not, and certainly should not, turn an alleged civil wrong into a criminal offense.

*Defendant discharged.*

6

*Paid 17.50 on Del.*

## CONSUMER RENTAL-PURCHASE AGREEMENT

LESSOR

# THE RENTAL STORE

4635 MONTGOMERY RD.  CINCINNATI, OH 45212  (513)631-4100

| | |
|---|---|
| LESSEE: | DATE: _____04/21/89_____ |
| JOHN K. GLENN | INSURANCE REQUESTED: _____ |
| 1917 LOSANTIVILLE APT #**1** | |
| CINTI, OH  45237 | INSURANCE WAIVED: _____ XXXXXXXXX |

DESCRIPTION OF LEASED PROPERTY:
YEAR: _____
MAKE: CHAIRS & LOVESEAT          *N 1363*          NEW: _____
MODEL: 225                                                        USED: XXXXX

THE RENTAL STORE leases to you the leased property above described upon the following terms and conditions:

**A. TERMS:** You will pay $ ___17.41___, weekly/monthly beginning on ___Apr 29 89___, for ___(1) Week___. You may, at your option, renew this Agreement. (The figure set forth does _____, does not XXX, include insurance. You are not obligated to obtain insurance. See explanation in Paragraph D4.)

**B. OWNERSHIP:** The Rental Store owns the leased property. In order for you to acquire ownership of the leased property, although you are under no obligation to do so, the following is required.

You may renew this Agreement for a TOTAL OF SCHEDULED PAYMENTS OF $ 1,287.00. THE TOTAL OF SCHEDULED PAYMENTS does not include delinquency charges, initial charge, delivery charges, payment pick-up charges, security deposit, insurance or taxes which are hereafter explained.

The number of payments, amount of payments, when payments are due, insurance, if any, and taxes necessary to acquire ownership are as follows:

Number of Payments ___078___
Amount of Payments ___16.50___          *17.41 wk*
When payments are due WEEKLY
Taxes necessary
to acquire ownership ___.91___
Insurance _____

YOU WILL NOT OWN THE PROPERTY BEING LEASED UNTIL ONE OF THE FOLLOWING EVENTS OCCURS:
(1) YOU MUST MAKE THE NUMBER OF PAYMENTS AND THE TOTAL OF SCHEDULED PAYMENTS, OR
(2) ANYTIME AFTER YOUR FIRST PERIODIC PAYMENT IS MADE, YOU MAY PAY 50% OF THE DIFFERENCE BETWEEN THE TOTAL OF SCHEDULED PAYMENTS AND THE TOTAL YOU HAVE PAID ON THE ACCOUNT.

**C. CASH PRICE:** The cash price of the property at the time of the agreement is $_____.

**D. EXPLANATION OF CHARGES, SECURITY DEPOSIT AND INSURANCE:**
(1) **Delinquency:** A delinquency payment charge of $2.00 may be required on any payment not paid within 3 business days after payment is due or the return of the leased property is required.
(2) **Delivery:** If delivery is required or requested by you, a delivery charge, not to exceed $15.00 may be paid, or, in the event more than five items are delivered, a delivery charge not to exceed $45.00 may be required.
(3) **Payment Pickup:** If The Rental Store is requested or required to visit Lessees' dwelling to pick up a payment, a charge not to exceed $7.00 may be demanded, which cannot be assessed more than six times in any six month period. No delinquency charge may be assessed for the applicable payment period.
(4) **Insurance:** You have no obligation to obtain insurance on the leased property. As hereafter explained, you are, however, responsible for any damage to or loss of the leased property. See Paragraph I.

**E.** At any time after you have made the first periodic payment, you may:
(1) Return the rented property to THE RENTAL STORE;
(2) Continue making periodic payments or renewals as provided for in this Agreement for the remaining term of the Agreement, or
(3) Purchase the property as set forth herein.

**F.** You are responsible for the fair market value of the property if and as of the time it is lost, stolen, damaged or destroyed. **DO NOT SIGN THE RENTAL-PURCHASE AGREEMENT UNTIL YOU HAVE READ FRONT AND BACK PAGES AND UNDERSTOOD THE TERMS.** By your signature on this Agreement you acknowledge that you have read and understand the Agreement and agree to all of its terms.

*States Exh #1*          X _____

G. **TERM:** The term of this Agreement is established by your initial rental payment of either _____ week(s) or one month in advance. The term begins on the delivery date and extends _____ week(s)/month following such date. You receive the use and possession of the property for successive weekly/monthly lease terms for so long as you renew the lease by making another rental payment before the end of the current lease term. You must also abide by all terms in this Agreement until the Agreement is terminated.

H. **RENEWAL RIGHT:** You, at your option, may renew this Agreement for an additional term at the end of each term by the payment to us of another rental payment. Each such payment will renew this Agreement for an additional term. However, in no event will you be obligated for any rental payment beyond any term for which you have made a payment, unless you keep the property without paying rent, in which case you will be liable for rent for each term or portion of such term that you keep the property until the property is returned to us or the Agreement is reinstated.

I. **INSURANCE AND DAMAGES:** You are fully responsible for the loss, theft, or destruction of the property from all causes whatever and, in such event, this Agreement will terminate, and you agree to pay us the fair market value of the property at the time of such loss, theft, or destruction. In the event of partial damage or destruction to the property from any cause whatever, you agree to pay us a reasonable cost of repair to the property. We do not provide any insurance on the property unless requested by you. You are responsible for its safety until it is returned to us.

J. **TITLE:** You understand that we own the property until such time as you obtain ownership of the property. During the term of the Agreement, you do not have any ownership interest or equity in the property, and you do not have any right to a refund for any rental payment made pursuant to this Agreement. You have no right to sell, mortgage, pawn, pledge, hock, encumber or otherwise dispose of this property or to assign any rights under this Agreement.

K. **TERMINATION BY YOU:** You, at your option, may terminate this Agreement at any time after you have made the first period of payment without obligation or penalty by returning the property in its present condition, fair wear and tear excepted, and by paying all rental payments and charges you owe through the date of return of the property. You are not obligated in any way to renew this Agreement or to purchase the property.

L. **TERMINATION BY US:** This Agreement, at our option, terminates upon your failure to renew the lease by making a rental payment on or before the last day of the current lease term, or by your breach of any provision of this Agreement, each of which is agreed to be material. Upon termination of this Agreement, you shall immediately return the property to us in its present condition, fair wear and tear excepted, and you shall remain liable for all rental payments and charges up to the date of the termination and for the period following the termination until the property is returned to us and for the performance of all the conditions of this Agreement.

M. **LOCATION OF PROPERTY:** You agree to keep the property in your possession at your residence address as shown on this Agreement and will not move the property from that location without our written consent. If you move the property without our written consent, you will have breached this Agreement, and we will have the right to immediate possession of the property.

N. **OWNERS RIGHT TO PROPERTY:** We and our agents, upon the termination of this Agreement, are specifically authorized by you to take possession of this property. You agree to pay us for all costs, expenses and damages, including reasonable attorney's fees that we may have to pay to obtain possession of the property if you do not voluntarily surrender the property upon request.

O. **ASSIGNMENT:** This Agreement may be sold, transferred, and assigned by us without restriction or notice to you. You have no right to assign, sublease or transfer your rights under this Agreement without our written consent.

P. **MAINTENANCE:** For the term of this Agreement and any renewal, we agree to maintain the property in good working order except for damage or misuse by you. Any maintenance or repair to the property must be performed by us. We will not be responsible for the cost of any repairs by others.

Q. **WARRANTY:** The manufacturer's warranty on the property, will be transferred to you if the warranty is still in effect at the time you acquire ownership of the property and, further, if the manufacturer's warranty is so transferable. OTHERWISE, WE MAKE NO WARRANTIES ON THE PROPERTY EITHER EXPRESS OR IMPLIED, NOR DO WE WARRANT THE MERCHANTABILITY OR FITNESS OF THE PROPERTY FOR ITS INTENDED USE.

R. **MODIFICATION:** No oral statements or agreements shall be valid or binding between us. This Agreement may be modified, varied, altered, or extended or agreements or conditions waived only by agreement in writing executed by us.

S. If any provision of this Contract is declared to be invalid, the remaining portions hereof shall remain in full force and effect.

**NOTICE: THIS LEASE-PURCHASE AGREEMENT IS REGULATED BY STATE LAW AND MAY BE ENFORCED BY THE ATTORNEY GENERAL OR BY PRIVATE LEGAL ACTION.**