This is an appeal from a Washington County Common Pleas Court judgment of conviction and sentence. The jury found Roy Garrison, defendant below and appellant herein, guilty of grand theft in violation of R.C. 2913.02(A)(3).
Appellant raises the following assignments of error for review:
FIRST ASSIGNMENT OF ERROR:
 "APPELLANT'S FAILURE TO MAKE THE LEASE PAYMENTS UNDER THE SUBLEASE DOES NOT CONSTITUTE A VIOLATION OF O.R.C. SECTION 2913.02, PERMITTING A CONVICTION WOULD VIOLATE OHIO CONSTITUTION ARTICLE ONE, SECTION FIFTEEN PROHIBITING IMPRISONMENT FOR DEBT, AND THE VERDICT IS THUS AGAINST THE WEIGHT OF THE EVIDENCE."
SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY DENYING HIS RIGHT TO COUNSEL, AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTION TEN OF THE OHIO CONSTITUTION."
THIRD ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY EXCLUDING EVIDENCE TENDING TO SHOW THAT HE HAD NOT ENGAGED IN FRAUD OR DECEPTION."
FOURTH ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY ALLOWING THE INTRODUCTION OF EVIDENCE WHOSE RELEVANCE WAS OUTWEIGHED BY ITS PREJUDICIAL NATURE."
The testimony at trial reveals the following facts pertinent to the instant appeal. In October of 1995, appellant agreed to sell Mark Mondo, owner of Mondo Polymer Technologies, an extruder machine[1] for $15,000. Mondo testified that appellant told Mondo that appellant would use the $15,000 to purchase a truck from Ed Fogle. Mondo further stated that appellant informed Mondo that appellant would give Mondo the title to the truck as collateral until Mondo received the extruder. In November of 1995, appellant arranged for the extruder to be delivered to Mondo's plant.
In early 1996, Mondo received a phone call from Elliott, demanding a rent payment on the extruder. Mondo subsequently learned that appellant did not own the extruder Mondo had purchased, but that appellant had subleased the machine from MIE.
On September 11, 1996, the Washington County Grand Jury returned an indictment charging appellant with grand theft in violation of R.C. 2913.02(A)(3).
Initially, R. Ashton Skelton represented appellant. Appellant subsequently substituted G. Rand Smith as counsel. Appellant began having financial difficulty, and the court permitted Smith to withdraw. The court subsequently designated Janet Fogle, a public defender, as appellant's counsel. Shortly before trial, appellant informed the court that his financial situation had improved and that he no longer qualified to receive assistance from a public defender. The court thus permitted Fogle to withdraw as appellant's counsel. Appellant subsequently filed a notice of substitution of counsel designating himself as counsel.
On February 24, 1998, prior to trial, the court asked appellant whether he wished to represent himself. Appellant stated that he wished to represent himself. The court briefly explained to appellant the voir dire process and how the trial would proceed.
On February 24, 1998, and continuing on February 25, 1998, the trial court held a jury trial. After the state had completed questioning its first witness, the trial court inquired of appellant whether appellant wished to waive his right to an attorney:
 "The Court: Mr. Garrison, I need to advise you of the following in regards to — on the record in open court in regards to counsel. I need to tell you first that you have a constitutional right to have counsel appointed without cost to you to represent you in all stages of this proceeding if you are indigent and unable to hire your own lawyer and that every person charged with a crime should have a lawyer to represent them. You have indicated to me in chambers this morning that you are in fact not indigent, your financial condition has improved since you were last represented by the public defender's office; is that correct?
[Appellant]: That is correct, Your Honor.
 The Court: I need to tell you that having a lawyer is important in every serious criminal case. An attorney is trained in skills necessary to properly investigate, prepare for and defend a case, cross examine the state's witnesses and argue the admission of evidence. An attorney is trained in the skills necessary to be able to evaluate and present possible defenses, call and examine witnesses, present documentary evidence and to argue the law. You do understand an attorney will do everything he or she honestly can do to help you and that it is a dangerous course of action to proceed to trial without a lawyer; do you understand that?
[Appellant]: I fully understand, Your Honor.
 The Court: Do you understand that the maximum penalty in this case is two years in prison and a fine of $5,000.00.
[Appellant): I do, Your Honor.
 The Court: Do you understand if you represent yourself you are being held to the same standards as an attorney, you will be required to adhere to the rules of evidence the same as an attorney, that as a lay person you lack the skills of an experienced trial lawyer and I advise you that this means you may not be able to present a defense or ask any questions of any witness if you are unable to do so in accordance with the requirements of the rules of procedure and of evidence and you do understand that I will not assist you in the presentation of your case; is that correct?
[Appellant]: I understand, Your Honor.
 The Court: I need to tell you that in my opinion proceeding to trial without a lawyer is a dangerous course of action and I advise you not to proceed to trial without a lawyer; do you understand that?
[Appellant]: Yes, Your Honor."
Appellant signed a waiver of counsel form[2] and the trial court permitted appellant to represent himself.
At trial, the state presented evidence tending to demonstrate that appellant committed theft by deception when appellant sold Mondo the extruder appellant was subleasing from MIE in exchange for $15,000.
Elliott testified about the circumstances giving rise to the sublease to appellant as follows. MIE had an ongoing business relationship with MKB Leasing ("MKB"). MKB provides financing for some of MIE's operations through leasing. MKB purchases the equipment MIE wishes to acquire. MKB then leases the equipment to MIE. Elliot testified that in 1994 MKB purchased an extruder from Ultra Filtered Oils ("UFO") for $50,000 and leased the extruder to MIE. The lease provided a term of thirty-six months, with payments of $1,600 per month.
In September of 1995, appellant approached Elliot about obtaining the extruder. Appellant initially attempted to lease the extruder directly through MKB. After appellant failed to submit a credit application and financial statements, MKB refused to lease the extruder to appellant. MKB agreed, however, to allow MIE to sublease the extruder to appellant.
On November 1, 1995, MIE entered into a sublease agreement with appellant for the extruder. The sublease provided that appellant would pay approximately $1,800 per month for thirty months. Appellant would gain ownership of the machine after all payments pursuant to the sublease had been made.
Appellant failed to make the first three payments due under the sublease. Elliott contacted appellant about his failure to comply with the lease. Elliott testified that appellant indicated that Mondo was responsible for giving appellant the money to make the lease payments. Appellant informed Elliott that Mondo had not given appellant any money, and, thus, appellant could not make the payments.
In February of 1996, Elliott testified that he contacted Mondo about getting the extruder back. Mondo informed Elliott that he had purchased the extruder from appellant.
Cliff Canfield, C.E.O. of MKB, testified about his relationship with MIE and appellant as follows. MKB leases different types of equipment to MIE. In 1994, MKB purchased the extruder from UFO for $50,000. On May 4, 1994, MKB entered into a lease agreement with MIE for the lease of the "Van Dorn twin screw extruder." The extruder was placed in operation at MIE, and MIE made lease payments pursuant to the lease agreement. In 1995, appellant approached Elliot to inquire about acquiring the extruder from MIE. Elliot contacted Canfield and asked whether MIE could transfer its lease obligation to appellant. MKB informed Elliot that prior to agreeing to a transfer of MIE's lease obligation, MKB would need to run various checks on appellant's financial history and on his ability to comply with the financial obligations that the lease would create.
MKB requested certain information from appellant regarding his ability to comply with the terms of the lease. We again note that appellant did not provide MKB with the information, but instead requested MKB to rely on appellant's word that he was qualified to lease the extruder. Eventually, Elliot convinced MKB to allow MIE to sublease the extruder to appellant, provided that MIE would remain liable for the lease payments should appellant fail to pay.
Cindy Fogle (maiden name Beebee) worked for appellant in the latter part of 1995. At trial, Cindy testified that she and her then-boyfriend (now husband), Ed Fogle, discussed the sale of Fogle's truck to appellant. Appellant informed Fogle that he would like to purchase the truck and Fogle agreed. Fogle permitted appellant to take possession of the truck and asked appellant to pay him in about a week or so. Appellant did not pay Fogle within a week. After approximately three weeks had elapsed from the time appellant took possession of the truck, Fogle still had not received payment for the truck.
Cindy testified that she told appellant that Fogle needed the money for the truck to make the payments. Later that same day, appellant presented Cindy with a cashier's check for approximately $15,000. Cindy took the check to Fogle and Fogle delivered the title to appellant.
Shortly after appellant received the title to the truck, Judy Mondo, Mark Mondo's wife and bookkeeper for Mondo's businesses, asked Cindy about the truck title. Cindy stated that she had given the title to appellant. Judy told Cindy, however, that the truck should have been titled in her name, not appellant's name. When Cindy next saw appellant, appellant informed her that Judy and Mark Mondo had given him the money for the truck. Appellant told Cindy that he was giving the Mondos the extruder in return for the money to purchase the truck.
In his defense, appellant presented testimony tending to demonstrate that: (1) appellant owned the extruder; (2) UFO and appellant did not sell the extruder to MKB; and (3) UFO and MIE entered into a joint venture and that the extruder was merely being relocated to MIE. Appellant testified that he did not have any intent to take anything from Mondo — he claimed he was entitled to the $15,000. On cross-examination, however, appellant admitted that he had subleased the extruder from MIE.
On February 25, 1998, the jury found appellant guilty of grand theft.
Appellant filed a timely notice of appeal.
 I
In his first assignment of error, appellant essentially raises two issues. First, appellant asserts that his conviction for theft violates Section 15, Article I of the Ohio Constitution.[3] Second, appellant argues that the verdict is against the manifest weight of the evidence. Specifically, appellant contends that the evidence does not support the jury's conclusion that appellant intended to deprive Mondo of his money or that appellant deceived Mondo. Rather, appellant claims that the evidence merely demonstrates that appellant "was involved in a business deal that went bad."
The state argues that appellant's first assignment of error misconstrues the theft charge. The state notes that appellant's argument relating to imprisonment for debt is based upon the premise that the state charged appellant with theft for failing to make lease payments to MIE. The state asserts that the theft charge was not based upon appellant's failure to make lease payments. Rather, the state asserts that the theft charge is premised upon appellant's conduct of selling Mondo a machine that appellant knew he did not own for $15,000. The state further argues that the verdict is not against the manifest weight of the evidence.
Initially, we agree with the state that appellant's argument relating to imprisonment for debt misconstrues the theft charge. Appellant frames the theft charge as arising out of appellant's failure to satisfy his sublease obligation. The state correctly notes that it did not charge appellant with theft due to appellant's failure to make sublease payments. Rather, the conduct giving rise to the theft charge occurred when appellant sold Mondo a machine that appellant knew he did not have any right or authority to sell. Thus, we find no merit to appellant's argument that his conviction for theft violates Section 15, Article I of the Ohio Constitution.
Furthermore, we disagree with appellant's argument that his conviction is against the manifest weight of the evidence. When considering an appellant's claim that the conviction is against the manifest weight of the evidence, the reviewing court sits, essentially, as a " 'thirteenth juror' and [may] disagree
with the fact finder's resolution of the conflicting testimony." State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2d 541, 546-47 (quoting Tibbs v. Florida (1982),457 U.S. 31, 42, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652). The reviewing court must dutifully examine the entire record, weighing the evidence and considering the credibility of witnesses, while being mindful that credibility generally is an issue for the trier of fact to resolve. State v. Thomas (1982),70 Ohio St.2d 79, 80, 434 N.E.2d 1356, 1357; State v. DeHass
(1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
Once the reviewing court has finished its examination, the court may reverse the judgment of conviction if it appears that the fact finder, in resolving conflicts in evidence, " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " Thompkins, 78 Ohio St.3d at 387, 678 N.E.2d at 547 (quotingState v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717, 720-21). If the state presented substantial evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, a reviewing court will not reverse the judgment of conviction as against the manifest weight of the evidence. State v. Eley (1978), 56 Ohio St.2d 169,383 N.E.2d 132, syllabus.
Upon our review of the entire record, we find that the trier of fact did not clearly lose its way and create a manifest miscarriage of justice. We find substantial evidence upon which the trier of fact reasonably could conclude that the state had established, beyond a reasonable doubt, the essential elements of the theft offense.
R.C. 2913.02(A)(3) sets forth the essential elements of the offense of theft by deception. The statute provides:
 (A) No person, with purpose to deprive the owner of property of services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
* * *
(3) By deception * * *."
Thus, to support a conviction for theft by deception, the state must establish that the defendant (1) with purpose to deprive the owner of property or services (2) knowingly obtained or exerted control over the owner's property or services (3) by deception.
R.C. 2913.01(C) defines "deprive" as follows:
 (C) "Deprive" means to do any of the following: (1) Withhold property of another permanently, or for a period that appropriates a substantial portion of its value or use, or with purpose to restore it only upon payment of a reward or other consideration; (2) Dispose of property so as to make it unlikely that the owner will recover it; (3) Accept, use, or appropriate money, property, or services, with purpose not to give proper consideration in return for the money, property, or services, and without reasonable justification or excuse for not giving proper consideration.
R.C. 2913.01(A) defines "deception" as follows:
 (A) "Deception" means knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact.
In the case at bar, appellant essentially argues that the manifest weight of the evidence fails to demonstrate that he knowingly intended to deprive Mondo of the $15,000 by deception. We disagree with appellant.
In State v. Joy (1995), 74 Ohio St.3d 178, 657 N.E.2d 503, the court was presented with a similar argument. In Joy, the defendant was the president of REMSNO, a non-profit agency that was funded primarily by a tax levy in Lucas County. The defendant also was the sole owner of Motivation Enterprises and owned or operated other businesses.
In January of 1992, the defendant asked REMSNO's operations director, John Mason, what the interest rate was for REMSNO's funds on deposit. Mason informed the defendant that the interest rate for the funds on deposit was approximately four percent. The defendant advised Mason that the defendant could get a more favorable interest rate through the bank with which he conducted a large portion of his business.
At another meeting in January of 1992, the defendant told Mason that the defendant would deposit REMSNO's money at the defendant's bank and that REMSNO would receive seven and a quarter percent interest on the funds. Mason issued a check for $350,000, containing the notation, "Investment Deposit," payable to Motivation Enterprises. Mason also typed a memorandum evidencing the agreement he had reached with the defendant. The memorandum reflected that the defendant would deposit the $350,000 check with his bank at a rate of approximately seven percent.
In mid-February, Mason received the first interest check and a document that he thought was a verification of the transaction with the defendant. The document, however, indicated that the money was being loaned to the defendant. Mason subsequently discovered that instead of placing the money in an interest bearing account at the defendant's bank, the defendant put the money in a noninterest paying checking account of Motivation Enterprises. The defendant then transferred the money to a checking account of a second business that the defendant owned. The defendant used the money to pay off his business debts.
The state charged the defendant with theft by deception. A jury found appellant guilty of aggravated theft by deception. On appeal, the defendant argued that insufficient evidence existed to support his conviction. The Ohio Supreme Court disagreed, finding that the foregoing evidence sufficiently demonstrated that the defendant intended to deprive REMSNO of its money by deception.
In Bartlett v. State (1876), 28 Ohio St. 669, the defendants, proprietors of an auction store, were charged and convicted of obtaining money under false pretenses. The defendants sold a watch to the victim and represented that the watch was eighteen karat gold. The Ohio Supreme Court upheld the conviction, stating:
 "If one purchases an article upon faith of the representation that it is what it is not, the criminality of the false pretense is not relieved because the article sold was of value. Should one buy a picture upon the assertion untruly made that it was from the brush of some distinguished painter, neither the falsity of the pretense nor the intent to deceive is disproved by evidence showing that the picture was of value."
Id. at 672.
In State v. Bakies (1991), 71 Ohio App.3d 810,595 N.E.2d 449, the court of appeals found no evidence of deception and reversed the defendant's conviction for theft by deception. InBakies, the defendant developed a relationship with Ursuala Schwydkiw. The defendant asked Schwydkiw for a $10,000 loan to help another individual finance a debt on her ranch. Schwydkiw agreed and appellant promised her that he would return the $10,000 plus an additional $5,000 in two to three weeks. The refinancing of the ranch fell through and the defendant did not pay Schwydkiw.
In reversing the defendant's conviction, the court of appeals found that the state presented insufficient evidence to demonstrate that at the time Schwydkiw gave the defendant the money, that the defendant knowingly deprived her of her money by deceiving her. The court stated that the state presented no evidence that the defendant concocted a story about the land financing deal in an attempt to deprive Schwydkiw of her money. Rather, the court found that the evidence demonstrated that the defendant intended to use the $10,000 for the refinancing and that the defendant intended to repay Schwydkiw.
In the case sub judice, we find substantial, credible evidence to support appellant's conviction. The state presented evidence demonstrating that: (1) appellant knew that MIE leased the extruder from MKB; (2) appellant understood that MIE merely was subleasing the extruder to appellant and not selling it outright; (3) appellant informed Mondo that appellant would sell the extruder to Mondo for $15,000 while knowing that appellant could not effect of valid sale because appellant merely had a right of possession of the extruder, not a right of ownership; and (4) appellant took $15,000 from Mondo in return for a sale which appellant knew was a sham. Appellant represented to Mondo that appellant owned the machine and that appellant would sell the machine to Mondo outright. Like the defendant in Joy, appellant misled Mondo in believing that he would acquire something of value in return for the money — the defendant in Joy led the victim to believe that the defendant would take the money and place it in an account with a higher interest rate; appellant led Mondo to believe that Mondo would receive full title to the machine in exchange for the money. Thus, we believe that the foregoing facts, if believed, presented the trier of fact with substantial evidence upon which to convict appellant of theft by deception. See, generally, State v. Karns (1992), 80 Ohio App.3d 199,608 N.E.2d 1145 (upholding general contractor's conviction for theft by deception when the general contractor took money from the homeowners and failed to fulfill his obligations).
Appellant claims that State v. Glenn (1990), 56 Ohio Misc.2d 1, 564 N.E.2d 1149 supports his assertion that his conviction is against the manifest weight of the evidence. In Glenn, the defendant was charged with theft as a result of his failure to maintain rental payments under a rental contract for used furniture. The state claimed that the defendant's failure to make rental payments in a timely manner constituted theft. The court recognized:
 "[T]he mere failure to return rental property which was voluntarily delivered to [the defendant's] possession does not and should not constitute theft. The Rental Store consented to [the defendant's] possession, and even delivered the furniture to [the defendant's] residence. The delivery was obviously with the consent of the owner. The consent cannot simply or automatically be revoked when one is in default of payment."
Id., 56 Ohio Misc.2d at 3, 564 N.E.2d at 1151.
We do not believe that Glenn supports appellant's argument that his theft conviction is against the manifest weight of the evidence. In Glenn, the state premised the theft charge solely upon the defendant's failure to maintain his rental obligations. In contrast, in the case at bar the state premised the theft charge upon appellant's conduct of selling an item that he did not own in order to obtain $15,000 from Mondo. The state did not premise the theft charge upon appellant's failure to maintain his obligations pursuant to the sublease.
Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error. II
 II
In his second assignment of error, appellant argues that the trial court deprived him of his constitutional right to counsel. While appellant recognizes that he signed a waiver of his right to counsel, appellant contends that the court erred in ascertaining whether appellant knowingly, voluntarily, and intelligently waived his right to counsel. In particular, appellant claims that the court erred by failing to conduct its inquiry prior to allowing the state to begin its case. Further, appellant claims that the trial court's inquiry was "meaningless in light of the [c]ourt's earlier statement that it would not continue the matter even if [appellant] did wish to retain counsel." Appellant additionally argues that appellant did not know: (1) of the nature of the charges; (2) of the statutory offenses included within the charges; (3) of the range of allowable punishments; (4) of the possible defenses and circumstances in mitigation thereof; or (5) of all the other facts essential to a broad understanding of the whole matter.
The Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution provide that a criminal defendant must be afforded the right to counsel before the trial court may convict and imprison the defendant. A criminal defendant may waive his right to counsel provided the defendant knowingly, intelligently, and voluntarily effects the waiver. Faretta v. California (1975), 422 U.S. 806,95 S.Ct. 2525, 45 L.Ed.2d 562; Johnson v. Zerbst (1938), 304 U.S. 458,58 S.Ct. 1019, 82 L.Ed. 1461; State v. Gibson (1976), 45 Ohio St.2d 366, 345 N.E.2d 399. Furthermore,
 "[a]lthough a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' Adams v. United States ex rel. McCann [(1942)], 317 U.S. [269], 279."
Faretta, 422 U.S. at 835, 95 S.Ct. at 2541, 45 L.Ed.2d 562. In order to establish an effective waiver of the right to counsel, the trial court must conduct a sufficient inquiry to determine whether the defendant fully understands and intelligently relinquishes his right to counsel. Gibson, paragraph two of the syllabus.
The United States Supreme Court has described the trial court's duty in determining whether a defendant knowingly and intelligently waives his right to counsel as follows:
 "[A] judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter."
Van Moltke v. Gillies (1948), 332 U.S. 708, 723-24,68 S.Ct. 316, 323, 92 L.Ed.2d 309; see, also, State v. Weiss (1993),92 Ohio App.3d 681, 637 N.E.2d 47; State v. Overholt (1991),77 Ohio App.3d 111, 601 N.E.2d 116; State v. Doane (1990),69 Ohio App.3d 638, 591 N.E.2d 735; State v. Evans
(Apr. 16, 1991), Pike App. No. 454, unreported.
In Evans, this court listed several factors of which the trial court should apprise the defendant prior to accepting the defendant's waiver of his right to counsel. A trial court should advise a criminal defendant who wishes to pursue self-representation that:
 "* * * (1) self-representation would be detrimental; (2) the defendant must follow all technical rules of substantive, procedural, and evidentiary law; (3) the prosecution would be represented by an experienced attorney; (4) the defendant must have the intellectual capacity to waive his right to counsel; (5) the possible punishments to which the defendant might be subjected; (6) if there is a disruption of the trial, the right to self-representation will be vacated; and (7) despite the defendant's efforts, he or she cannot subsequently claim ineffective assistance of counsel."
Evans.
In Faretta, the Court found that the defendant "clearly and unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel." Faretta,422 U.S. at 835, 95 S.Ct. at 2541, 45 L.Ed.2d 562. The Court noted that the record affirmatively demonstrated that the defendant was literate, competent, and understanding, and that the defendant was voluntarily exercising his informed free will. The Court further noted that the trial judge had warned the defendant that it would be a mistake not to accept the assistance of counsel, and that the defendant would be required to follow all the "ground rules of trial procedure. Faretta, 422 U.S. at 836,95 S.Ct. at 2541, 45 L.Ed.2d 562.
Our review of the record in the case sub judice reveals that the trial court conducted a thorough inquiry into whether appellant knowingly, intelligently, and voluntarily relinquished his right to counsel. The trial court fully informed appellant that choosing self-representation was a dangerous course of action in a criminal trial. The trial court explained to appellant that an attorney is trained in the rules of evidence and procedure and that the trial court would hold appellant to the same standards if appellant chose to represent himself. The trial court further explained that an attorney would be better able to present a defense to the charge. The trial court advised appellant that the offense charged carried a maximum penalty of two years imprisonment and a $5,000 fine. Appellant stated that he understood all of the trial court's admonitions, yet still wanted to pursue self-representation. Appellant then signed a written waiver of counsel form. Based upon the foregoing facts, we agree with the trial court's conclusion that appellant knowingly, intelligently, and voluntarily waived his right to counsel.
Appellant nevertheless asserts that his waiver was ineffective because the trial court did not conduct its inquiry until after the trial had begun. We believe, however, that any error which may have occurred as a result of the trial court's failure to conduct the inquiry prior to trial is harmless. See Crim.R. 52(A) (stating that harmless errors "shall be disregarded"). An error is harmless if the error, defect, irregularity, or variance" "does not affect substantial rights." Crim.R. 52(A). In the case sub judice, we find no prejudice to appellant. We note that the record reflects that prior to trial, the court conducted a brief initial inquiry into appellant's decision to forego counsel. During the initial inquiry, appellant unequivocally stated that he did not wish to retain counsel. Furthermore, we note that in Gibson, supra, the Ohio Supreme Court concluded that the defendant knowingly, voluntarily, and intelligently waived his right to counsel even though the defendant decided to forego counsel at the last minute and even though the trial court stated that it would not delay the trial any longer. We again note that when the trial court questioned appellant whether he wished to forego counsel, both prior to trial and during trial, appellant never wavered in his desire to waive counsel and represent himself. The record fully reveals that appellant chose to pursue self-representation with his "eyes open." See Faretta, supra.
Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error. III
 III
Appellant's third and fourth assignments of error are interrelated, and we will, therefore, address the two assignments of error together.
In his third assignment of error, appellant asserts that the trial court erred by excluding evidence that appellant claims would have helped establish that appellant did not engage in fraud or deception. Specifically, appellant argues that the trial court erred by excluding evidence relevant to the following issues: (1) whether evidence was manufactured after the fact to incriminate appellant; (2) whether "the program" was viable; (3) whether Mondo shut down "the operation" to protect a Ohio Department of Natural Resources grant, thus causing appellant to be unable to make the sublease payments; (4) whether attempts were made to settle the civil aspects; (5) whether Mondo had other reasons for claiming his $15,000 had been stolen; (6) whether Mondo claimed to have been a victim of theft because he felt there was another reason; (7) whether Mondo could support his claim of appellant's untrustworthiness; (8) whether the $15,000 was for matters other than the extruder; (9) whether Mondo believed he was deceived; (10) whether appellant and Elliott agreed that appellant need not make any additional payments under the sublease; (11) why MKB permitted the sublease and then allowed so much time to pass before repossession; (12) whether the sheriff's officer had been given false information; (13) whether intent is an element of theft; (14) what the value of the extruder was; (15) what happened to the $50,000 MKB paid for the extruder; (16) whether the extruder was "number one"; (17) were other Mondo checks marked similarly; and (18) what was in the letter to the Ohio Department of Natural Resources.
In his fourth assignment of error, appellant contends that the trial court erred by allowing certain evidence to be submitted to the court during the trial. In particular, appellant claims that the trial court erred by allowing Mondo to testify that: (1) Mondo had acquired another machine from appellant and that appellant's representations as to that machine's capabilities were grossly overstated; (2) that the product was unsaleable; (3) that Mondo was concerned appellant would not pay suppliers; (4) that selling some of the product was a fluke; (5) that the program was never viable in the first place; (6) that appellant owed him $15,000; (7) that he knew appellant would not pay his bills; (8) that no one would take a check from appellant because they did not trust him; (9) that appellant lied to Mondo about how much product had been sold. Appellant further asserts that the trial court erred by permitting Cindy Fogle's testimony that appellant intentionally delayed sales in an effort to put Mondo out of business.
Initially, we note that the decision to admit or exclude relevant evidence is within the sound discretion of the trial court. The trial court's decision to admit or exclude relevant evidence cannot be reversed absent an abuse of discretion.State v. Combs (1991), 62 Ohio St.3d 278, 581 N.E.2d 1071;State v. Sage (1987), 31 Ohio St.3d 173, 510 N.E.2d 343; Statev. Rooker (Apr. 15, 1993), Pike App. No. 483, unreported. The term "abuse of discretion" implies more than an error of law or judgment. Rather the term suggests that the court acted in an unreasonable, arbitrary or unconscionable manner. State v. Xie
(1992), 62 Ohio St.3d 521, 584 N.E.2d 715; State v. Montgomery
(1991), 61 Ohio St.3d 410, 575 N.E.2d 167. Furthermore, when applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. In re Jane Doe 1 (1991), 57 Ohio St.3d 135,566 N.E.2d 1181 (citing Berk v. Matthews (1990), 53 Ohio St.3d 161,359 N.E.2d 1301).
Evid.R. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Thus, in determining whether evidence is relevant, a trial court first must determine whether the evidence, if introduced, would tend to establish a fact that is material to the action. In assessing whether certain evidence is material, a trial court must evaluate:
 "the relation between the propositions for which the evidence is offered and the issues in the case. If the evidence is offered to help prove a proposition which is not a matter in issue, the evidence is immaterial. What is 'in issue,' that is, within the range of the litigated controversy, is determined mainly by the pleadings, read in the light of the rules of pleadings and controlled by the substantive law."
McCormick, Evidence (4 Ed.Strong Ed. 1992) 338, Section 185. Once a court determines that the evidence is material, the court must consider the probative value of the evidence; that is, "the tendency of evidence to establish the proposition that it is offered to prove." Id. at 339. For evidence to have probative force, "the evidence must be more (or less) probable when the disputed fact is true rather than false." Id. If the evidence fails either the materiality or the probative value requirement, the evidence is irrelevant, and Evid.R. 402 requires the trial court to deem it inadmissable.
Upon our review of the record in the case sub judice, we conclude that the trial court did not abuse its discretion in excluding the evidence of which appellant complains in his third assignment of error. We believe that the trial court reasonably could have concluded that the testimony and evidence appellant sought to submit to the court was neither material nor probative and, thus, that the evidence was not relevant. Furthermore, we do not believe that the trial court abused its discretion by allowing the introduction of the testimony complained of in appellant's fourth assignment of error. The trial court rationally could have concluded that the evidence helped demonstrate that appellant possessed a criminal intent. In fact, the trial court afforded appellant wide latitude in presenting his testimony and evidence to the jury. Our review of the record reveals that the trial court permitted appellant to introduce evidence pertinent to the issues at hand, including numerous documentary exhibits. We find no abuse of discretion.
Accordingly, based upon the foregoing reasons, we overrule appellant's third and fourth assignments of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J. Kline, P.J.: Concur in Judgment Opinion
For the Court
 By: ________________ Peter B. Abele Judge
 NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.
[1] At trial, Scott Elliot, president and C.E.O. of Marietta Industrial Enterprises ("MIE"), described an extruder as follows:
 "An extruder is a melting and pressure machine that melts plastic particles under high temperature and then pressurizes those particles through some sort of a shape to make an extruded piece of material, much like a cookie gun pushes dough out through a die. The material hardens and theoretically stays in the same shape and form and can then be used as structural members."
[2] The waiver of counsel form provides as follows:
 "I, Roy L. Garrison, have first been advised in Open Court that
 1. I have a Constitutional right to have counsel appointed without cost to me, to represent me in all stages of this proceeding if I am indigent and unable to hire my own lawyer. Every person charged with a crime should have a lawyer to represent them.
 2. Having a lawyer is important in every serious criminal case. An attorney is trained in the skills necessary to properly investigate, prepare for and defend a case, cross examine the State[']s witnesses and argue the admission of evidence. An attorney is trained in the skills necessary to be able to evaluate and present possible defenses, call and question defense witnesses, present documentary evidence and argue the law. An attorney will do everything she honestly can to help you. It is a dangerous course of action to proceed to trial without a lawyer.
 3. That the maximum penalty that can be imposed in this case is 2 years in prison and a fine of $5,000.
 4. If I represent myself, I will be held to the same standards as an attorney. I will be required to adhere to the rules of evidence and procedure, the same as an attorney. As a lay person I lack the skills of an experienced trial attorney. I have been advised that this means that I may not be able to present a defense or ask any questions of any witness, if I am unable to do so in accordance with the requirements of the rules of procedure and of evidence. If I represent myself, the judge will not assist me in the presentation of my case.
 5. In the opinion of the Judge, proceeding to trial without a lawyer was a dangerous course of action. The Judge has strongly advised me not to proceed to trial without a lawyer.
 I have been advised of all of the above in open court. I understand all of the above. Nonetheless, I knowingly, intelligently and voluntarily waive my right to counsel. I want to represent myself at the trial of this action. I sign this waiver in open Court."
[3] Section 15, Article I of the Ohio Constitution provides as follows:
 No person shall be imprisoned for debt in any civil action, on mesne or final process, unless in cases of fraud.