UNITED STATES of America,
Plaintiff–Appellee,

v.

Gerald DOTSON, Defendant–Appellant.

No. 94–3196.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 1, 1994.

Decided March 14, 1995.

Roger S. Bamberger, Asst. U.S. Atty. (argued and briefed), Cleveland, OH, for plaintiff-appellee.

James R. Willis (argued and briefed), Willis, Blackwell & Rogers, Cleveland, OH, for defendant-appellant.

Before: LIVELY, JONES and DAUGHTREY, Circuit Judges.

NATHANIEL R. JONES, Circuit Judge.

Defendant Gerald Dotson appeals the district court's denial of his motion to suppress evidence. For the reasons stated herein, we AFFIRM the decision of the district court.

## I.

On March 11, 1993, Gerald Dotson and another male visited a car dealership in the Cleveland area. Dotson and his acquaintance test drove, and Dotson decided to purchase, a white 1991 Acura Legend. Dotson made a $5,000 cash deposit on the car and informed the salesperson that he would return later in the day with the rest of the $22,000 purchase price.

Later that day, Dotson returned with his mother, Daisy Young, and the remaining $17,000, in cash. Dotson told the dealership to put the title in the name of Daisy Young, and it was indicated on a Form 8300, Report of Cash Payments Over $10,000 Received in a Trade or Business,[1] that Daisy Young was the purchaser of the vehicle. Dotson was

told that he would have to pick up the title to the car later.

A few days later, apparently on March 15, 1993, a confidential source informed Special Agent Mark Kahler of the Internal Revenue Service that two individuals had purchased a vehicle at the car dealership for cash and had identified themselves as Thomas Jefferson and George Washington. Kahler testified that after receiving this information, agents from his office interviewed the sales manager of the dealership and verified that two young black men had made an initial $5,000 cash deposit, that the car was subsequently purchased with an additional $17,000 cash payment, and that the car was to be titled in the name of Daisy Young. The agents ran a check on Daisy Young's tax returns and learned that on her returns she had reported an income of $5,000 or less. Kahler further explained that his office then asked the dealership to contact his office when anyone came to pick up the title. The plan was to try to identify one or both of the men, who had initially visited the dealership to purchase the car, and then further investigate whether the Form 8300 had been completed with false information, namely that Daisy Young was not the actual purchaser of the vehicle.

On April 1, 1993, Dotson went to the dealership to pick up the title to the car. Dotson testified that when he arrived at the dealership, he was informed that he could not receive the title unless he had identification for Daisy Young. Dotson telephoned his mother and asked her to come down to the dealership. He waited, and she arrived in about half an hour.

Meanwhile, the dealership contacted Kahler's office, and surveillance was initiated on both Dotson and his mother. Kahler radioed for a Cleveland Police Officer to assist with the surveillance. Detective John Gannon of the Cleveland Police Department responded to the call.

Gannon ultimately joined the surveillance in the vicinity of Quincy and Unwin Roads, an area which Gannon testified is a high-

---

1. Automobile dealers must complete and file Form 8300 with the IRS whenever they receive in excess of $10,000 in currency. The form

identifies the individual(s) and currency amounts involved in the transaction.

crime area. He testified that while tailing Dotson from this location, he observed Dotson drive through a red light located at 46th and Quincy at around 6:00 p.m. Dotson then parked his car at the curb near 43rd and Quincy. Gannon testified that he pulled behind Dotson's car, for the purpose of identifying Dotson. Gannon walked up to the car and tapped on the driver's side window with his left hand, while holding his badge in his right. Gannon testified that Dotson started to get out of the car, and that he instructed Dotson to remain in the car and he asked for Dotson's identification. Nevertheless, Dotson proceeded to get out of the car, and when Gannon sensed that Dotson was about to run, he put his hand on Dotson's shoulder. At this point, Dotson began to run, and while Gannon attempted to hold Dotson, Kahler, who had by now arrived on the scene, jumped on both Gannon and Dotson. After subduing Dotson, Gannon placed him under arrest, handcuffed, and frisked him. The agents found a digital scale, four bags of cocaine, and a large amount of cash on Dotson. His booking card, introduced at trial, indicates the time of Dotson's arrest as 6:02 p.m.

Dotson testified that it was after 6:30 p.m. when he drove through the light at 46th and Quincy, and the light was flashing yellow, not red. He testified that he then proceeded down the street, parked the car in front of his house, took the key out of the ignition, and looked up to see a white male talking at his door, but that he could not understand him. He got out of the car, and the man said "let me see your ID" and then grabbed him. Dotson testified that as he started to run, he was tackled from the side and hit the ground. Pinned down by Gannon, he was told he was under arrest. Dotson testified that after he was handcuffed, Gannon showed him his badge. Dotson explained that it was a fear of being robbed that prompted him to flee. Neither Gannon, nor Kahler, nor any other officers on the scene were dressed in police uniforms or driving marked police vehicles.

On April 28, 1993, Dotson and his mother, Daisy Young, were indicted for one count of money laundering in violation of 18 U.S.C. §§ 2, 1956(a)(1)(B)(i), and Dotson was charged with one count of possession of cocaine base with intent to distribute in violation of 21 U.S.C. § 841.

On May 24, 1993, Dotson filed a motion to suppress evidence seized from his person at the time of his arrest. On June 28, 1993, a suppression hearing was held, and on July 16, 1993, the district court denied the motion. On August 19, 1993, Dotson entered a guilty plea to the money laundering charge and a conditional plea to the cocaine possession charge. This latter plea was entered conditionally to allow Dotson to appeal the denial of his motion to suppress evidence. On February 11, 1994, Dotson was sentenced to 120 months imprisonment, followed by five years supervised release, and he was ordered to pay a special assessment of $100. Dotson then filed this appeal.

## II.

Dotson first argues that Detective Gannon's efforts to physically restrain him amounted to a de facto arrest for which there was no probable cause. The district court found that "regardless of any alleged traffic offense, the officers had probable cause to arrest this defendant for violating 31 U.S.C. § 5313 et seq. for giving false information on the Currency Transaction Report." [2]

■ When reviewing the rulings of a district court on a motion to suppress evidence, this court applies the clearly erroneous standard to the district court's factual findings, and reviews the district court's legal conclusions de novo. United States v. Roberts, 986 F.2d 1026 (6th Cir.), cert. denied, —— U.S. ——, 114 S.Ct. 271, 126 L.Ed.2d 222 (1993). A reviewing court accords great deference to a lower court's independent determination of probable cause. Illinois v. Gates, 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983); Massachusetts v. Upton, 466 U.S. 727, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984).

---

**2.** We recognize that this statutory reference is in error, and that the falsely filed form in issue is in fact a Form 8300, Report of Cash Payments Over $10,000 Received in a Trade or Business, which must be filed pursuant to 26 U.S.C. § 6050I.

230

This court will reverse such determinations only if they are clearly erroneous. *United States v. Williams,* 962 F.2d 1218 (6th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 264, 121 L.Ed.2d 194 (1992).

We find the district court's determination that Detective Gannon had probable cause to arrest Dotson based solely on his alleged filing of false information was clearly erroneous. Nevertheless, we find that Detective Gannon did possess articulable facts leading to a reasonable suspicion that Dotson was involved in criminal activity which justified an investigatory stop. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Appellant's counsel argued with considerable force that in today's climate, it is reasonable for a person to react in panic—including flight—when one's movement is sought to be inhibited by civilian-clad individuals in unmarked vehicles. That they are law enforcement officials is irrelevant for the moment. We acknowledge the legitimacy of this perspective. In reviewing the situation before us, however, we do not evaluate the subjective reasonableness of Dotson's actions, but the objective reasonableness of the arresting officer's actions. We find under the circumstances here that Detective Gannon's effort to restrain Dotson was an appropriate degree of force to effectuate the *Terry* stop, and that Dotson's attempt to flee ripened Detective Gannon's reasonable suspicion into probable cause to arrest Dotson.

The Supreme Court has held that the test for whether an arrest is constitutionally valid is "whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964); *see United States v. Thomas,* 11 F.3d 620, 627 (6th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1570, 128 L.Ed.2d 214 (1994). Furthermore, a warrantless arrest does not violate the Fourth Amendment as long as such probable cause exists. *Criss v. City of Kent,*

867 F.2d 259, 262 (6th Cir.1988) (citing *Michigan v. DeFillippo,* 443 U.S. 31, 36, 99 S.Ct. 2627, 2631, 61 L.Ed.2d 343 (1979)).

This court has recognized three categories of police-citizen encounters: (1) an arrest which requires probable cause pursuant to the Fourth Amendment; (2) an investigatory stop which is a limited, non-intrusive detention and requires reasonable suspicion based on articulable facts, *i.e.* the classic *Terry* stop; and (3) consensual encounters where an officer seeks voluntary cooperation of a citizen and requires no suspicion at all, as described in *Florida v. Royer,* 460 U.S. 491, 497, 103 S.Ct. 1319, 1323–24, 75 L.Ed.2d 229 (1983). *United States v. Flowers,* 909 F.2d 145, 147 (6th Cir.1990).

In the instant case, at the moment Detective Gannon attempted to physically restrain Dotson, he knew that Dotson was under investigation for possible money laundering, and that Dotson had just retrieved title to a vehicle that was not in his name. The question for us is whether these facts rise to a reasonable suspicion. We hold that they were sufficient to give Detective Gannon reasonable suspicion to stop Dotson.

This court in discussing *Terry* stops has stated the following:

The scope of activities during an investigatory detention must reasonably be related to the circumstances that initially justified the stop. When actions by police exceed the bounds permitted by reasonable suspicion, the seizure becomes an arrest and must be supported by probable cause. The Supreme Court has declined to establish a litmus test to determine when a *Terry* stop becomes an arrest, leaving the lower courts to decide the issues on a case-by-case basis. In making this decision, we are to consider the scope and nature of the restraints placed on an individual's liberty.

*United States v. Richardson,* 949 F.2d 851, 856 (6th Cir.1991). In the instant case, we find that an arrest did not occur at the moment that Detective Gannon attempted to physically prevent Dotson's escape. Instead, Detective Gannon used a reasonable degree of force to effectuate an investigatory stop. *See United States v. Hardnett,* 804 F.2d 353,

357 (6th Cir.1986), (noting that "mere use or display of force in making a stop will not necessarily convert the stop into an arrest"), *cert. denied,* 479 U.S. 1097, 107 S.Ct. 1318, 94 L.Ed.2d 171 (1987); *United States v. Weaver,* 8 F.3d 1240, 1244 (7th Cir.1993) (holding that "[o]nce police have the reasonable suspicion needed to justify an investigatory stop, they may use the forcible means necessary to effectuate that stop, provided their actions are reasonable under the circumstances").

Furthermore, we find that Dotson's efforts to flee, coupled with Detective Gannon's reasonable suspicion that Dotson was involved in criminal activities, established probable cause to arrest Dotson. *See United States v. Holloway,* 962 F.2d 451, 461 (5th Cir.1992) (holding that defendant's attempted escape from officers was sufficient additional factor to turn officers' reasonable suspicion to probable cause); *Tom v. Voida,* 963 F.2d 952, 960 (7th Cir.1992) (holding that defendant's flight after officer's orders to stop turned reasonable suspicion into probable cause supporting arrest); *see also United States v. Sharpe,* 470 U.S. 675, 705, 105 S.Ct. 1568, 1585, 84 L.Ed.2d 605 (1985) (Brennan, J., dissenting) (noting established view that "where police officers reasonably suspect that an individual may be engaged in criminal activity, and the individual deliberately takes flight when the officers attempt to stop and question him, the officers generally no longer have mere reasonable suspicion, but probable cause to arrest" and collecting cases); *Kelly v. Bender,* 23 F.3d 1328, 1330 (8th Cir.1994) (concluding that officers' preexisting reasonable suspicion coupled with individual's flight constituted arguable probable cause to arrest individual); *cf. United States v. Lane,* 909 F.2d 895, 899 (6th Cir.1990) (where two uniformed officers entered building and four males began running away from officers up stairwell, their flight invited pursuit and supplied officers with reasonable basis for conducting investigative stop), *cert. denied,* 498 U.S. 1093, 111 S.Ct. 977, 112 L.Ed.2d 1062 (1991); *United States v. Pope,* 561 F.2d 663 (6th Cir.1977) (defendant's flight at moment plainclothes officer showed his credentials invited pursuit, and agent acted reasonably in pursuing defendant).

With respect to the other issues Dotson raises on appeal, we find them to be without merit. It is irrelevant whether IRS agents have statutory authority to make warrantless arrests, because Detective Gannon, a police officer, was the one who arrested Dotson for obstruction of police business, in violation of Ohio Revised Code § 2921.31. Dotson's argument that there was not probable cause to arrest him with respect to the false information given on the Form 8300 is nullified by our determination that probable cause accrued when Dotson attempted to flee from Detective Gannon. Finally, we find that there was no "traffic stop" in this case, as Dotson was not "pulled over" but stopped his car of his own volition. Consequently, we shall not address whether the alleged "traffic stop" was pretextual.

### III.

For the foregoing reasons, we AFFIRM the district court's denial of Dotson's motion to suppress evidence and we AFFIRM Dotson's conviction and sentence.