68 F.3d 476
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Hector TORRES, Defendant-Appellant.
 No. 94-4105.
 United States Court of Appeals, Sixth Circuit.
 Oct. 11, 1995.
 
 Before: MARTIN, SUHRHEINRICH,* Circuit Judges, and CHURCHILL,** District Judge.
 PER CURIAM.
 
 
 1
 Hector Torres appeals his conviction and sentence after a jury found him guilty of one count of possessing heroin with the intent to distribute, in violation of 21 U.S.C. Sec. 841(a)(1), and one count of possessing a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. Sec. 924(c). Torres claims that he was arrested without probable cause in violation of the Fourth Amendment, that hearsay evidence was improperly admitted against him at trial, and that the district court improperly denied him reductions in his sentencing level under United States Sentencing Guidelines Sec. 3B1.2 (for his minor role in the offense) and Sec. 3E1.1 (for acceptance of responsibility). For the following reasons, we AFFIRM Torres's conviction and sentence.
 
 
 2
 On April 7, 1994, at approximately 6:30 p.m., Agent Peter Elliot of the Bureau of Alcohol, Tobacco and Firearms, arrested Eugene Raymond Beverly for trafficking in heroin. Beverly was the target of a five-month investigation by the ATF. Beverly agreed to cooperate with the ATF; in particular, Elliot wanted Beverly's help in collecting evidence about a person named "Peto," a name that Elliot had heard repeatedly during the five-month investigation. Beverly claimed to know Peto, and showed Elliot two ledgers in which were recorded Beverly's drug transactions for the previous five months. One entry had the name "Peto" followed by the notation "three bags." Peto had given Beverly a pager number to use to contact him. Beverly also told Elliot that Peto was known to use bodyguards while selling drugs.
 
 
 3
 Beverly agreed to set up a drug transaction with Peto for later that evening. At approximately 9:00 p.m., Beverly placed a call to Peto's pager number. A few minutes later Peto returned the call. Agent Elliot heard Beverly negotiate a buy of forty bundles of heroin for $4,000 from Peto and arrange to meet him at 54th and Franklin in forty-five minutes. While travelling to meet Peto with Agent Elliot, Beverly received two more pages from Peto. Beverly called the numbers provided, and Peto informed Beverly that he would bring only twenty-five bundles, but wanted payment for the other fifteen. Peto reaffirmed that he would meet them in the area of 54th and Franklin.
 
 
 4
 Peto had told Beverly that he would be in his "big white car," but when a blue Nissan drove slowly past Elliot and Beverly in the vicinity of the meeting place, Beverly immediately told Elliot that Peto was in the Nissan in the front passenger seat wearing a baseball cap. Peto was later identified as Javier Torres, the defendant's brother-in-law. Hector Torres was seated in the backseat and another man, Luis Perez, was driving. Elliot asked Beverly if he was positive that Peto was in the Nissan, and Beverly replied that he was.
 
 
 5
 Elliot and other ATF agents stopped the Nissan, ordered the three occupants out of the car, placed them on the ground and then frisked them. During the pat down, Hector Torres stated, "I have a gun." Indeed, the pat down revealed a .25 semi-automatic pistol, twenty-five bundles of heroin, a clip with ammunition, and a pager. The pat down of Javier Torres revealed the pager he used to contact Beverly.
 
 
 6
 The ATF's subsequent investigation revealed that Javier Torres acquired the gun and drugs from "Carlos," Javier's supplier, just prior to going to meet Beverly. In a written statement, Hector Torres stated that Carlos gave him the gun "because of the large amount of heroin" involved, and also handed the heroin to him. Hector Torres also stated that he put the gun and the heroin in his jacket pocket, and went with his brother-in-law to the vicinity of 54th and Franklin to make the sale. Hector Torres admits in his brief that he was "aware of what was going on," but argued at trial, and argues on appeal, that he agreed to hold the gun and drugs simply because he was asked to do so.
 
 
 7
 Hector Torres was charged with the two counts described above and pleaded "Not Guilty" to both counts. Torres's counsel in her opening statement at trial told the jury that Hector Torres did not dispute that he possessed the gun and the heroin, but argued that he did not intend to use the gun to facilitate a drug offense, and therefore could not be convicted under 18 U.S.C. Sec. 924(c). On August 16, 1994, a jury found Hector Torres guilty on both counts. On October 17, 1994, the district court sentenced Torres to consecutive terms of imprisonment of one year, nine months on the drug possession charge and five years on the Section 924(c) count, followed by three years' supervised release.
 
 
 8
 Hector Torres's first argument on appeal is that his conviction should be overturned because he was arrested without probable cause. Torres contends that he was arrested when the ATF agents stopped the car, extracted the occupants, and placed them on the ground for a frisk. After a suppression hearing, the district court found that probable cause existed for Torres's arrest and denied his motion to suppress the evidence and his statement. In this context, we review a district court's factual findings for clear error, and its conclusions of law de novo. United States v. Dotson, 49 F.3d 227, 229 (6th Cir.1995) (citations omitted); United States v. Garza, 10 F.3d 1241, 1245 (6th Cir.1993); United States v. Williams, 962 F.2d 1218, 1221 (6th Cir.), cert. denied, 113 S.Ct. 264 (1992).
 
 
 9
 The district court did not err in determining that probable cause existed for Torres's arrest. We agree with the district court that Agent Elliot had ample information, in addition to Beverly's statements that Peto travelled with armed bodyguards, to give to him probable cause to arrest Hector Torres at the moment they placed him on the ground for the frisk. Leading up to this arrest, Elliot saw Beverly page, and heard Beverly speak to, a man named "Peto," and arrange to buy forty bundles of heroin for $4,000; someone answering to the name Peto called Beverly back twice during their course of dealing; Peto was travelling with Torres and Perez. Thus, Agent Elliot had a significant amount of circumstantial evidence to believe that the men accompanying Peto were committing or about to commit a drug trafficking crime. Beck v. Ohio, 379 U.S. 89, 91 (1964) (stating that an arrest is constitutionally valid if, at the moment the arrest is made, the officers had probable cause to make it); Criss v. City of Kent, 867 F.2d 259, 262 (6th Cir.1988) (stating that a warrantless arrest does not violate the Fourth Amendment if the police had probable cause to make it) (citing Michigan v. DeFillippo, 443 U.S. 31, 36 (1979)).
 
 
 10
 Torres claims further that the district court erred in overruling his objection to Agent Elliot's testimony that Beverly told him that Javier Torres was known to be accompanied by armed bodyguards during his drug transactions. Torres's counsel objected to Agent Elliot's testimony, but the district court overruled without comment. We review evidentiary rulings for abuse of discretion. United States v. Rios, 842 F.2d 868, 872 (6th Cir.1988), cert. denied, 488 U.S. 1031 (1989). Beverly's out-of-court statement was offered to prove that Hector Torres was a bodyguard for a drug transaction, and thus to prove that the gun was used to facilitate a drug trafficking crime in violation of Section 924(c). The United States argues that it was offered to explain why Elliot acted in the manner he did at the time he stopped the Nissan. The trial transcript reveals that this testimony was most likely being offered to prove Torres's reason for having the gun, and not Elliot's actions. We decline, however, to reverse Torres's conviction because, although the district court erred in admitting this hearsay testimony, the error was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 23-24 (1967) (holding that constitutional errors do not require automatic reversal of a conviction if an appellate court can declare that the error was "harmless beyond a reasonable doubt."), partially overruled by, Brecht v. Abrahamson, 113 S.Ct. 1710, 1717-22 (1993) (holding that the "harmless error beyond a reasonable doubt" analysis not applicable in habeas cases); White v. Illinois, 502 U.S. 346, 352 (1992) (holding that, while not to be equated with the Confrontation Clause of the Sixth Amendment, the hearsay rules protect Sixth Amendment values); see also Fed.R.Crim.P. 52(a).
 
 
 11
 This error was harmless beyond a reasonable doubt in light of the overwhelming evidence presented that Hector Torres possessed the gun to facilitate a drug transaction. United States v. Acosta-Cazares, 878 F.2d 945, 951-52 (6th Cir.) (this Court broadly construes "carries" or "uses" under Section 924(c), a conviction may be proper even when the defendant does not actually "carry" a weapon during a drug trafficking offense), cert. denied, 493 U.S. 899 (1989). Here, Torres was carrying both a gun and heroin at the time of his arrest. Further, in Torres's post-arrest written statement, he declared that: "Javier would ask me to go with him in case somebody should try to rob him;" "Carlos then told Javier that he should take the gun because of the large amount of heroin. Carlos then gave me the pistol." Therefore, even without the hearsay testimony, the overwhelming evidence of guilt as to the elements of the Section 924(c) count enables us to declare that the error was harmless beyond a reasonable doubt.
 
 
 12
 Finally, Torres contends that the district court erred in not reducing his sentence level under USSG Sec. 3B1.2(b) and Sec. 3E1.1(a) because of his minor role in this offense and because he accepted responsibility for his actions. See 18 U.S.C. Sec. 3742(e) (stating that factual determinations regarding sentencing are reviewed for clear error). Our review of the record persuades us that the district court did not err in denying these reductions. Although a defendant exercising his right to a trial is still eligible for this reduction, USSG Sec. 3E1.1 comment. (n. 2), we do not think the district court clearly erred in finding that this is not one of the rare cases where a defendant who puts the government to its proof is simultaneously accepting responsibility for each count. Similarly, we do not think the district court clearly erred in determining that this was not an isolated instance of Hector Torres acting merely as a "mule" for his brother-in-law. Again, Hector Torres indicated in his written statement that this was not the first time he had acted as a bodyguard for Javier Torres: "Javier would also sell heroin on East 49th Street and Superior Avenue. Javier would ask me to go with him in case somebody should try to rob him."
 
 
 13
 Based on the foregoing, we AFFIRM the judgment of the district court.
 
 
 
 *
 Judge Suhrheinrich did not participate in oral argument but participated in the decision after hearing oral argument tapes
 
 
 **
 The Honorable James P. Churchill, United States District Judge for the Eastern District of Michigan, sitting by designation