**John HOGAN, et al., Plaintiffs,**

v.

**RENT–A–CENTER, INC., et al., Defendants.**

**Case No. C–3–00–502.**

United States District Court, S.D. Ohio, Western Division.

April 23, 2002.

Charles A. McKinney, Dayton, OH, for Plaintiffs.

Martin A Beyer, Jessica Young Baxley, Sebaly Shillito & Dyer, Dayton, OH, Wilson G. Weisenfelder, Jr., Rendigs Fry Kiely & Dennis, Cincinnati, OH, Joseph M. Hegedus, Climaco, Climaco, Lefkowitz & Garofoli, Columbus, OH, for Defendants.

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING, AS MOOT, IN PART MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANT STEVE DERRINGER (DOC. # 19); DECISION AND ENTRY OVERRULING, AS MOOT, MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANTS RENT A CENTER, INC., AND RON JOHNS (DOC. # 22); JUDGMENT TO BE ENTERED IN FAVOR OF DEFENDANTS AND AGAINST PLAINTIFFS ON PLAINTIFFS' FEDERAL CLAIM AGAINST DEFENDANT DERRINGER; STATE LAW CLAIMS AGAINST ALL DEFENDANTS DISMISSED WITHOUT PREJUDICE TO REFILING IN A STATE COURT OF COMPETENT JURISDICTION; TERMINATION ENTRY

RICE, Chief Judge.

The Plaintiffs, John Hogan ("Hogan") and Arlita Hudgins ("Hudgins"), bring this litigation to obtain compensation for the injuries they allege to have suffered as a result of being arrested by officers of the Trotwood, Ohio, Police Department at 3:15 a.m., on April 13, 2000.[1] The arrest warrants issued for the Plaintiffs charged

---

**1.** Since this litigation is before the Court on     the Defendants' Motions for Summary Judg-

them with committing theft offenses in violation of Ohio Revised Code § 2913.02(A)(2). *See* Doc. # 20. Those charges stemmed from the Plaintiffs' rental of a large screen television and VCR from Defendant Rent–A–Center, Inc. ("RAC"). In their Complaint, the Plaintiffs set forth a claim under 42 U.S.C. § 1983 against Detective Steve Derringer ("Derringer") of the Trotwood Police Department, alleging that he violated their rights under the Fourth and Fourteenth Amendments to the United States Constitution. *See* Doc. # 1 at ¶ 39. They also set forth state law claims of intentional infliction of emotional distress, invasion of privacy, assault, false arrest and malicious prosecution against Derringer, RAC and Defendant Ron Johns ("Johns"), the manager of the RAC store from which Plaintiffs had rented the large screen television and VCR. *Id.* at ¶ 41. The Plaintiffs allege that this Court can exercise federal question jurisdiction over their claim under § 1983 and supplemental jurisdiction over their state law claims.

In October, 1999, Hudgins entered into three separate rental contracts with the RAC store located in Trotwood, Ohio, one of which was for the large screen television and VCR, while the others were for furniture and a dinette set. Shortly after executing the rental contracts, she defaulted on all three of them. As a consequence, employees of RAC repeatedly contacted Hudgins and Hogan, her live-in boyfriend, to convince them to cure the default. By February, 2000, Hudgins was five weeks in default. She surrendered the furniture and dinette set to RAC, but wanted to keep the large screen television and VCR. RAC agreed to write a new contract for those two items, on the condition that Hogan also become a signatory to that contract.[2] When Hogan agreed to do so, the parties entered into a new rental contract on February 14, 2000.

On or about February 18, 2000, the Plaintiffs made rental payments for the period through March 11, 2000. Thereafter, the Plaintiffs did not make another payment to RAC for the large screen television and the VCR. As a consequence, employees of RAC contacted them and demanded that they return those items. Plaintiffs refused to return the merchandise to RAC. In addition, they did not make the requisite rental payments.[3] As a result, employees of RAC sought assistance from the Trotwood Police Department in an effort to obtain possession of the large screen television and the VCR, and to collect the sum that the Plaintiffs owed on the rental contract. On April 11, 2000, Derringer visited the Plaintiffs' apartment and told Hudgins to return the items in question to RAC.[4] Later that day, Hudgins telephoned Derringer and told him that the property would be returned. In addition, on April 11th, Hogan tele-

---

ment, the Court sets forth the facts and circumstances giving rise to it in the manner most favorable to the Plaintiffs.

**2.** RAC also agreed to forgive the arrearage owed by Hudgins.

**3.** About one week after they had gone into default, Hogan and Hudgins had a conversation with Johns, in which they offered to pay the one week arrearage and the next week's rent. Citing Hudgins' history of prior defaults, Johns refused that offer and insisted that the Plaintiffs pay the arrearage and the

next two weeks rent, or return the rental property. Plaintiffs refused to do either. Indeed, there is no evidence before the Court that the Plaintiffs made any rental payments after their initial February 18th payment, which covered the period through March 11th.

**4.** Hogan was not at the Plaintiffs' residence when Derringer discussed the matter with Hudgins. When Hogan learned that Derringer had visited their residence, he called that officer's supervisor and lodged a complaint against Derringer.

phoned RAC and told the rental company that the large screen television and VCR were outside the apartment which he shared with Hudgins and that RAC could pick up the property. RAC did so.

Derringer went to the RAC store on April 11th, and discussed the matter with Johns and his supervisor, Greg Richards ("Richards"). After Richards had told Derringer that the Plaintiffs had returned the large screen television and VCR, the officer asked whether RAC still wanted to pursue criminal charges against the Plaintiffs.[5] Richards indicated that RAC had no objection to continuing to pursue such criminal charges.[6] On April 12, 2000, arrest warrants, charging the Plaintiffs with theft in violation of Ohio Revised Code § 2913.02(A)(2), were issued by a deputy clerk of the First District Court of Montgomery County. See Doc. # 20. Trotwood police officers arrested the Plaintiffs on April 13, 2000.[7] Although Hudgins was released shortly after she had been arrested, Hogan remained incarcerated until April 20, 2000. On that date, the charges against the Plaintiffs were dismissed.

This case is now before the Court on motions seeking summary judgment filed by Derringer (Doc. # 19) and by RAC and Johns (Doc. # 22). As a means of analysis, the Court will initially set forth the standards which are applicable to all motions for summary judgment, following which it will turn to the parties' arguments in support of and in opposition to the Defendants' requests for summary judgment.

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548. *See also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.") (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that

---

5. The Plaintiffs contend that RAC refused to inform Trotwood police officers that the property had been returned. See Doc. # 26 at 4; Doc. # 27 at 4. The Plaintiffs support that contention by citing Hogan's deposition testimony. That testimony does not raise a genuine issue of material fact as to whether RAC refused to tell officers that the large screen television and VCR had been returned, since it is based exclusively on Hogan's speculation, rather than on his personal knowledge. During his deposition, Hogan speculated that RAC must have refused to inform the officers that the rental property had been returned, since he and Hudgins were arrested. Hogan

Dep. at 113. However, he conceded that he was not present during discussions between employees of RAC and Trotwood police officers. *Id.*

6. Trotwood police officers had told employees of RAC that the Police Department would not continue to assist in the future recovery of unreturned rental property, if RAC stopped cooperating in criminal prosecutions once the property was returned.

7. Derringer was not among the arresting officers.

there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed.R.Civ.P. 50). *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). *See also Michigan Protection and Advocacy Service, Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir.1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is enti-

tled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all *reasonable* inferences in the favor of that party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the factfinder. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). *See also L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.*, 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment...."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on

file, together with any affidavits submitted, specifically called to its attention by the parties.

Derringer seeks summary judgment on Plaintiffs' claim under § 1983 and on their state law claims, while RAC and Johns seek summary judgment on the Plaintiffs' state law claims, the only claims that have been asserted against those Defendants.[8] As a means of analysis, the Court will initially address Derringer's request for summary judgment on Plaintiffs' claim under § 1983. If the Court concludes that he is entitled to summary judgment on that claim, it will then decide whether to continue to exercise supplemental jurisdiction over the Plaintiffs' state law claims, before addressing the Defendants' requests for summary judgment on those claims.

As is indicated above, the Plaintiffs base their § 1983 claim on the allegation that Derringer violated their rights under the Fourth and Fourteenth Amendments. *See* Doc. # 1 at ¶ 39. Although the Plaintiffs have not set forth with specificity the manner in which they believe Derringer violated those constitutional provisions, it is apparent from their memorandum opposing his request for summary judgment that their § 1983 claim is predicated upon the theory that the officer arrested them without probable cause.[9] Derringer argues that he is entitled to summary judgment on this claim, because probable cause supported the arrest of the Plaintiffs. Derringer also argues that he is entitled to summary judgment on the Plaintiffs' § 1983 claim on the basis of qualified immunity.[10]

**8.** The Plaintiffs have attached a document which purports to be an affidavit from Hudgins (*see* Docs. # 26 at Ex. E and # 27 at Ex. E) to their memoranda opposing the Defendants' motions. Although that document was signed by Hudgins, it was neither sworn to before a notary public nor signed under penalty of perjury. In *Little v. B.P. Exploration & Oil Co.*, 265 F.3d 357 (6th Cir.2001), the Sixth Circuit reiterated that a District Court must disregard unsworn statements when ruling upon a motion for summary judgment. *Id.* at 363 n. 3 (citing *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968–69 (6th Cir.1991)). In *Peters v. Lincoln Electric Co.*, 285 F.3d 456 (6th Cir.2002), the Sixth Circuit indicated that to constitute an affidavit, a document must be sworn to before a notary public. The *Peters* court also recognized that a District Court may base its ruling on a motion for summary judgment upon a declaration, signed under penalty of perjury in accordance with 28 U.S.C. § 1746. *See also, Pollock v. Pollock*, 154 F.3d 601, 611 n. 20 (6th Cir.1998) (recognizing that an unsworn declaration signed under penalty of perjury in accordance with § 1746 may be relied upon when ruling on a motion for summary judgment). Since the document signed by Hudgins is neither an affidavit nor a declaration, the Court cannot consider it in ruling upon the motions for summary judgment. Parenthetically, if this

Court had considered Hudgins' purported affidavit when ruling on Derringer's request for summary judgment, it would have nevertheless concluded that said document failed to raise a genuine issue of material fact concerning the nonexistence of probable cause. Moreover, the Court did not rely upon the assertions therein when it set forth the facts and circumstances giving rise to this litigation.

**9.** The Plaintiffs also appear to be asserting a § 1983 claim predicated upon the theory that Derringer maliciously prosecuted them. *See* Doc. # 27 at 13–14. In *Frantz v. Village of Bradford*, 245 F.3d 869 (6th Cir.2001), the Sixth Circuit held that a plaintiff does not have a constitutional claim for malicious prosecution, separate and apart from a Fourth Amendment claim that he was arrested without probable cause. Accordingly, the Plaintiffs do not have a viable § 1983 malicious prosecution claim distinct from their claim under that statute; predicated upon the theory that they were arrested without probable cause in violation of the Fourth Amendment.

**10.** Since Derringer does not argue that he is entitled to summary judgment on Plaintiffs' § 1983 claim, because the deputy clerk of the

For reasons which follow, the Court concludes that probable cause to arrest the Plaintiffs existed when they were arrested. In other words, the evidence fails to raise a genuine issue of material fact as to the nonexistence of probable cause to arrest them. Accordingly, the Court sustains Derringer's request for summary judgment on the merits of Plaintiffs' § 1983 claim, without deciding whether he is entitled to same on the basis of qualified immunity.

The Court begins by reviewing the standards which are applicable to the determination of whether probable cause exists. However, before engaging in that analysis, the Court must stress that its function is to decide whether the evidence raises a genuine issue of material fact concerning the nonexistence of probable cause to believe that the Plaintiffs violated § 2913.02(A)(2), not to assess whether, as a matter of public policy, they should have been prosecuted at all in what is, in reality, a classic civil breach of contract/collection suit.

It is well-settled that the arrest of an individual does not violate the Fourth Amendment, as long as officers have probable cause to believe that the individual is committing or has committed an offense. *Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *United States v. Dotson,* 49 F.3d 227 (6th Cir.), *cert. denied,* 516 U.S. 848, 116 S.Ct. 141, 133 L.Ed.2d 87 (1995). In *Dotson,* the Sixth Circuit explained the test to be applied to determine whether a arrest was lawful:

The Supreme Court has held that the test for whether an arrest is constitutionally valid is "whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *see United States v. Thomas,* 11 F.3d 620, 627 (6th Cir.1993), *cert. denied,* 511 U.S. 1043, 114 S.Ct. 1570, 128 L.Ed.2d 214 (1994).

*Id.* at 230. In *United States v. Strickland,* 144 F.3d 412 (6th Cir.1998), the Sixth Circuit explained that "there is no precise formula for determining the existence or nonexistence of probable cause; rather, a reviewing court is to take into account the factual and practical considerations of everyday life that would lead a reasonable person to determine that there is a reasonable probability that illegality has occurred." *Id.* at 415. The Sixth Circuit has further noted that probable cause is "reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion." *United States v. Padro,* 52 F.3d 120, 122–23 (6th Cir.1995). Moreover, " 'probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.' " *United States v. Wright,* 16 F.3d 1429, 1438 (6th Cir.) (quoting *Illinois v.*

First District Court issued arrest warrants for the Plaintiffs, the Court does not consider that issue. Parenthetically, the Plaintiffs have not argued that the only manner in which they could be arrested under state law was in accordance with the warrants, since Derringer and the arresting officers did not observe them commit the crime with which they were charged. Even if the Plaintiffs had raised that issue, it would not have altered the

Court's consideration of the issue of whether their arrest violated the Fourth Amendment. *See Pyles v. Raisor,* 60 F.3d 1211 (6th Cir. 1995) (rejecting a Fourth Amendment challenge to a misdemeanor arrest when probable cause existed, even though the arrest may have violated the plaintiff's state right to be arrested for misdemeanor only when the offense has been committed in the presence of the arresting officer).

*Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)), *cert denied,* 512 U.S. 1243, 114 S.Ct. 2759, 129 L.Ed.2d 874 (1994).

As is indicated, the Plaintiffs were arrested for violating Ohio Revised Code § 2913.02(A)(2), which provides:

(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

    \*    \*    \*    \*    \*    \*

(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent.

Deprive is defined by § 2913.01(C), which provides:

(C) "Deprive" means to do any of the following:

(1) Withhold property of another permanently, or for a period that appropriates a substantial portion of its value or use, or with purpose to restore it only upon payment of a reward or other consideration;

(2) Dispose of property so as to make it unlikely that the owner will recover it;

(3) Accept, use, or appropriate money, property, or services, with purpose not to give proper consideration in return for the money, property, or services, and without reasonable justification or excuse for not giving proper consideration.

Herein, the Court concludes that probable cause to arrest the Plaintiffs for violating § 2913.02(A)(2) existed. Stated somewhat differently, the evidence fails to raise a genuine issue of material fact concerning the nonexistence of such probable cause.

In March, 2000, after the Plaintiffs had stopped making the requisite weekly payments under the rental agreement for the large screen television and VCR, employees of RAC contacted them and demanded that they return that merchandise. The Plaintiffs refused to do so. In addition, they did not make the requisite rental payments. The contract by which the Plaintiffs had rented that property conditioned their continued possession of it on their payment of the stipulated weekly rent. That unrefuted evidence establishes that the Plaintiffs had exerted control over RAC's property, the large screen television and VCR, beyond the express or implied consent given to them by their rental agreement with RAC, i.e., beyond the time covered by the rental payments they had made.

Of course, a person violates § 2913.02(A)(2), only if he or she acts with the requisite intent, i.e., the purpose to deprive the owner of property. Herein, there was a reasonable probability that the Plaintiffs acted with the purpose of depriving RAC of the property in question; therefore, probable cause existed to believe that they acted with such a purpose. In *State v. Joy,* 74 Ohio St.3d 178, 657 N.E.2d 503 (1995), the Ohio Supreme Court rejected the argument that the trial court had committed error by refusing to instruct the jury on all three definitions of deprive contained in § 2913.01(C), since that statute is written in the disjunctive. The Court need consider only § 2913.01(C)(3), under which a person deprives another of property when he uses the other's property with the purpose of not giving proper consideration in return. Despite being told to return the large screen television and VCR, the Plaintiffs did not become current in their rental payments; rather, they continued to use RAC's property, without paying the rent to which they had contractually obligated themselves. They also initially ignored the demand that the rental property be returned. Consequently, there was probable cause to believe that they used RAC's property with the purpose of failing to give

proper consideration in return.[11]

Nevertheless, Plaintiffs, relying upon *State v. Glenn,* 56 Ohio Misc.2d 1, 564 N.E.2d 1149 (1990), argue that they could not have committed a theft offense in violation of § 2913.02(A)(2). Because *Glenn* is factually distinguishable, this Court does not consider that decision to mean that probable cause to believe that the Plaintiffs violated that statutory provision herein did not exist. The defendant in *Glenn* had rented furniture and had stopped making payments on it. As a result, he was prosecuted for violating § 2913.02(A). After a bench trial, Judge Painter of the Hamilton County Municipal Court found him not guilty in the reported decision upon which the Plaintiffs rely. Judge Painter concluded that failure to make the requisite rental payments was a matter for civil court, rather than constituting a crime, in violation of § 2913.02(A). However, unlike the instant litigation, there was no indication therein that the furniture rental company had contacted the defendant after he had defaulted on his rental payments and demanded that he return the property, only to be met with a refusal by the defendant along with the failure to make the requisite rental payments. If, herein, RAC had not demanded that the Plaintiffs return the large screen television and VCR and if the Plaintiffs had not failed to make the rental payments they contractually obligated themselves to make or to return the rental property, this Court would, without hesitation, conclude that there is a genuine issue of material fact as to whether there existed probable to believe that the Plaintiffs had violated § 2913.02(A)(2), by using RAC's property with the purpose of not giving proper consideration in return and without reasonable justification or excuse for not giving proper consideration.

In addition, the Plaintiffs argue that they cannot have committed a theft offense, because RAC did not comply with Ohio Revised Code § 2913.72(B). Under § 2913.72(A)(2), a defendant's intent to commit theft of rental property can be established, if he fails to return rental property to its owner after being notified to do so. Section 2913.72(B) requires that such a notice be sent by certified mail, return receipt requested. Herein, there is no evidence that RAC sent such a notice to the Plaintiffs. While the failure to comply with § 2913.72(B) prevents reliance upon § 2913.72(A)(2) to establish the Plaintiffs' intent to commit theft of the rental property, § 2913.72(C) provides that § 2913.72(A) is not the exclusive means of establishing such intent. For reasons set forth above, this Court concludes that there existed probable cause to believe that the Plaintiffs acted with the requisite intent, the purpose to deprive RAC, by using its property with the purpose of not giving proper consideration in return and without reasonable justification or excuse for not giving proper consideration. Therefore, the failure to comply with § 2913.72(B) does not destroy the existence of probable cause to believe that the Plaintiffs violated § 2913.02(A)(2).

**11.** In arguing that he is entitled to summary judgment, Derringer has cited *State v. Wedell,* 2001 WL 1001016 (Ohio App. 8th Dist.2001). Therein, the Cuyahoga County Court of Appeals affirmed the defendant's conviction for theft in violation of § 2913.02(A). That prosecution arose from the defendant's refusal to return equipment he had rented from ABC Rental. Unlike the Plaintiffs herein, the defendant did not return the property he had rented. Therefore, this Court does not consider that decision to establish, as a matter of law, that there existed probable cause herein to believe that the Plaintiffs violated § 2913.02(A)(2). Nevertheless, for reasons set forth in the text, the Court concludes that such probable cause did exist, even though the Plaintiffs had returned the large screen television and VCR before they were arrested.

In sum, given that the Plaintiffs refused to return the rental property when told by employees of RAC to do so and that they did not pay rent for that property after March 11, 2000, the Court concludes that there was probable cause to believe that the Plaintiffs violated § 2913.02(A)(2), since the evidence fails to raise a genuine issue of material fact concerning the nonexistence of such probable cause. Accordingly, the Court sustains Derringer's Motion for Summary Judgment (Doc. # 19), as it relates to Plaintiffs' § 1983 claim.

Having concluded that Derringer is entitled to summary judgment on the Plaintiffs' § 1983 claim, their only federal claim,[12] the Court must decide whether to continue to exercise supplemental jurisdiction over Plaintiffs' state law claims. In *Weeks v. Portage County Executive Offices*, 235 F.3d 275 (6th Cir.2000), the Sixth Circuit indicated that a District Court properly exercises its discretion in declining to continue to exercise such jurisdiction, after it has granted a motion for summary judgment disposing of all federal claims:

> The district court dismissed plaintiff's state law claims, declining to exercise supplemental jurisdiction. Such a decision falls within the sound discretion of the district court and will not be overturned on appeal absent an abuse of discretion. *See Valot v. Southeast Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1230 (6th Cir.1997). Supplemental jurisdiction is governed by 28 U.S.C. § 1367, which includes an explicit provision permitting the district court to decline to exercise supplemental jurisdiction when that court has dismissed all of the claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). Having granted summary judgment to the defendants

and dismissed all of the federal claims in this action, the district court did not abuse its discretion in dismissing the state law claims.

*Id.* at 279–80. *See also, Brandenburg v. Housing Authority of Irvine*, 253 F.3d 891, 900 (6th Cir.2001) (noting that declining to continue to exercise supplemental jurisdiction over state law claims is "the usual course," when all federal claims have been disposed of on summary judgment); *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 233 (6th Cir.1997) (recognizing that if all federal claims are dismissed before trial, remaining state law claims generally should be dismissed as well); *McGuire v. City of Moraine, Ohio*, 178 F.Supp.2d 882, 902 (S.D.Ohio 2001) (declining to continue to exercise supplemental jurisdiction over plaintiffs' state law claims, after entering summary judgment on their federal claims).

Accordingly, the Court declines to continue to exercise supplemental jurisdiction over Plaintiffs' state law claims. Rather, the Court will dismiss those claims without prejudice. Therefore, it overrules the Motion for Summary Judgment filed by RAC and Johns (Doc. # 22), as moot. The Court also overrules, as moot, the portion of Derringer's Motion for Summary Judgment (Doc. # 19) which is directed at Plaintiffs' state law claims.

Based upon the foregoing, the Court sustains in part and overrules, as moot, in part Derringer's Motion for Summary Judgment (Doc. # 19). The Court also overrules, as moot, the Motion for Summary Judgment filed by RAC and Johns (Doc. # 22). Judgment is to be entered in favor of Defendants and against Plaintiffs, dismissing their federal claim with prejudice and their state law claims without

---

**12.** It bears emphasis that the Plaintiffs have not asserted a federal law claim against RAC or Johns.

prejudice to refiling in a state court of competent jurisdiction.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.