[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 6, 2006
THOMAS K. KAHN
CLERK

_____

No. 06-11625
Non-Argument Calendar

_____

D. C. Docket No. 05-60259-CR-WPD

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ERIC WAYNE BIVENS,
a.k.a. Eric C. Bivens,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(November 6, 2006)**

Before BLACK, CARNES and MARCUS, Circuit Judges.

PER CURIAM:

Eric Wayne Bivens appeals his conviction for possessing a firearm while a convicted felon, in violation of 18 U.S.C. § 922(g)(1).

**I.**

On September 23, 2005, as Bivens, who was driving a black 2004 Bentley, was about to pull out of a parking space next to the Broward County Courthouse, two police cars pulled up beside him—one on Bivens' side of the car and the other to the back of it. Bivens, who had been at the courthouse for a hearing on an assault charge, was blocked from leaving the parking lot.

Agent Sheldon Burkett of the Drug Enforcement Administration, who was in the police car to the back of the Bentley, asked Bivens to get out of the car. Bivens complied, but as he was exiting, he told Burkett that he had a firearm in the car. Because he knew that Bivens was a convicted felon, Burkett arrested him on a charge of being a felon in possession of a firearm.

Bivens was then taken to the marked patrol car parked beside the Bentley and read his <u>Miranda</u> rights. Bivens said that he understood his rights and then volunteered that he had the gun for protection. Once at the police station, Bivens voluntarily signed a consent form allowing the officers to search his Miami Beach condominium. He gave the officers the keys to his condo and told them where they could find contraband, money and a gun.

As a result of the search of the condominium and Bivens' inculpatory statements, he was indicted for the possession of two firearms by a convicted felon—the firearm found in the Bentley and another one found in his condominium. Bivens moved to suppress the two guns and all of his statements to the police on the grounds that his initial seizure was illegal, his consent to search his condo was not given voluntarily, and his statements were made as a product of an illegal arrest. After a two day evidentiary hearing, the district court denied Bivens' motion in full.

Bivens then entered into a written plea agreement with the government, agreeing to plead guilty to possessing a firearm while a convicted felon in exchange for a recommendation by the government that his sentence be reduced for accepting responsibility for the crime. The plea agreement also reserved Bivens' right to appeal the district court's decision on his motion to suppress the guns and statements, a right he is exercising here.

## II.

We review only for clear error the district court's factual findings on a motion to suppress evidence and de novo the court's application of the law to the findings. United States v. Nunez, 455 F.3d 1223, 1225 (11th Cir. 2006). Where appropriate, we construe all facts in the light most favorable to the prevailing party.

3

Id. at 1125–26.

Bivens first argues that the district court erred in denying his motion to suppress because the police did not have a reasonable suspicion to make the initial stop, which occurred when they blocked his car from leaving the courthouse parking lot. He contends that the twin suspicions accepted by the court as the bases for the stop—Bivens' suspected money laundering activities and "ascertaining the ownership of the Bentley and/or the legality of its registration"—were not sufficient because they were not supported by any particularized facts known to the officers before the stop and were, in any case, improper as a matter of law. We disagree.

While Bivens correctly notes that "[t]he Fourth Amendment protects individuals from unreasonable search and seizure," United States v. Purcell, 236 F.3d 1274, 1277 (11th Cir. 2001), it does not prohibit "a police officer . . . in appropriate circumstances and in an appropriate manner [from] approach[ing] a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." Terry v. Ohio, 392 U.S. 1, 22, 88 S. Ct. 1868, 1880 (1968). That is, law enforcement officers may seize a suspect for a brief, investigatory Terry-stop where (1) the officers have a reasonable suspicion that the suspect was involved in, or is about to be involved in, criminal activity,

4

and (2) the stop "was reasonably related in scope to the circumstances which justified the interference in the first place." Id. at 20, 88 S. Ct. at 1879; United States v. Acosta, 363 F.3d 1141, 1144–45 (11th Cir. 2004).

Reasonable suspicion is a less demanding standard than probable cause, and requires only a fair probability that illegal activity has occurred. United States v. Sokolow, 490 U.S. 1, 7, 109 S. Ct. 1581, 1585 (1989). A court reviewing the reasonableness of the officers' suspicion must consider the totality of the circumstances leading up to the stop and the collective knowledge of the law enforcement officers involved. Acosta, 363 F.3d at 1145.

Bivens does not raise any issue about the duration of the stop; the time between the beginning of the stop and his admission to possessing a firearm was negligible. His contention is that Agent Burkett did not have any reasonable suspicion to make the stop to begin with. We start by looking at whether Agent Burkett and his fellow officers had specific and particular information that Bivens' Bentley was not registered in his name or at his address, which was one of the bases for the stop that the officers identified at the evidentiary hearing. The officers testified that before the stop they knew: (1) Bivens was under investigation for using his Bentley to traffic drugs and launder money; (2) Bivens lived in a condominium on Miami Beach; (3) the Bentley was registered to an

5

address in Dania, Florida, where Bivens admittedly did not reside; and (4) the car was not registered in Bivens' name.[1] (It seems to have been undisputed all along that Bivens owned the car; there was no evidence he did not.)

As the district court concluded, the information the officers had when they made the stop indicated that Bivens probably was in violation of Florida's vehicle registration law, which requires that "every owner or person in charge of a motor vehicle which is operated or driven on the roads of this state shall register the vehicle in this state" and that every owner "notify the department in writing of any change of address within 20 days of such change." Fla. Stat § 320.02(1) & (4). This probable violation gave Agent Burkett and his colleagues sufficient justification to briefly stop the Bentley and ask him about the registration in order to see if there was a violation.

The Supreme Court has held that, "[a]s a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Whren v. United States, 517 U.S. 806, 810, 116 S. Ct. 1769, 1772 (1996); United States v. Chanthasouxat, 342 F.3d 1271, 1275 (11th Cir. 2003) ("a traffic stop is a constitutional detention if it is justified by reasonable

---

[1] Bivens does not argue, and he presented no evidence at the evidentiary hearing, that he was not the owner of the Bentley. The record, in fact, indicates that Bivens frequently drove, and was closely associated with, the car.

suspicion under Terry or probable cause to believe a traffic violation has occurred under Whren").

Bivens does not dispute any of this. Instead, he argues that it cannot be the law that "any vehicle could be stopped simply because the driver of the vehicle was different then the registered owner." But, he cites no authority for that proposition. It is the law that if officers have knowledge that a person is regularly driving, as if he were the owner, a car that is not registered to him, and the state has a vehicle registration law similar to Florida's, the police have a reasonable basis to stop the car and inquire about whether the registration laws have been violated. See Whren, 517 U.S. at 810, 814–17, 116 S. Ct. at 1772, 1774–76 (approving Terry stops of vehicles where drivers violate even minor traffic laws, including turning without a signal, regardless of subjective intent of investigating officers ). This is all Agent Burkett did here. As the Tenth Circuit has observed, "a defining characteristic of our traffic stop jurisprudence is the defendant's lack of a valid registration, license, bill of sale, or some other indicia of proof to lawfully operate and possess the vehicle in question, thus giving rise to objectively reasonable suspicion that the vehicle may be stolen." United States v. Fernandez, 18 F.3d 874, 879–80 (10th Cir. 1994) (citing cases).

Because the officers had particularized information that Bivens probably had

7

violated Florida's vehicle registration law, and the stop was constitutional on that basis, we need not address the second proffered rationale for the stop, namely, that the police had information that Bivens was involved in laundering money. See Merrett v. Moore, 58 F.3d 1547, 1550–51 (11th Cir. 1995) ("where the state has one lawful purpose sufficient to justify a roadblock, that the state also uses the roadblock to intercept illegal drugs does not render the roadblock unconstitutional"; "we adopt a totally objective rule: a state may conduct a mixed-motive roadblock as long as one purpose presented for the roadblock could validly justify the roadblock"). We do note, however, that all the other information that the law enforcement officers had regarding Bivens' involvement in drugs and money laundering—that he was under investigation in Detroit for his involvement in drugs; that he used the Bentley to trasport drugs and money; that he was involved with the "Black Mafia," which was a known drug trafficking and money laundering outfit—merely serves to bolster the case that, under the totality of the circumstances, there was a fair probability that Bivens was involved in criminal activity. See United States v. Dotson, 49 F.3d 227, 228–29, 230 (6th Cir. 1995) (police had reasonable suspicion to stop defendant where he was already under investigation for money laundering and the investigating officers saw him driving a car that was not titled in the defendant's name).

## III.

Bivens also argues that his consent to search his Miami Beach condominium, which was given while he was under arrest and in police custody for the firearm and marijuana charges, was invalidly obtained because the arrest was the product of the illegal stop in the parking lot. Because we have already decided that the initial stop was valid under <u>Terry</u>, Bivens' arrest was as well. As a result, this second contention of his must fail.

**AFFIRMED.**